[Cite as *A.S. v. P.F.*, 2013-Ohio-4857.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

A.S.

    Appellee

    v.

P.F.

    Appellant

C.A. No.    13CA010379

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    13CV179323

DECISION AND JOURNAL ENTRY

Dated: November 4, 2013

---

BELFANCE, Presiding Judge.

{¶1}    Appellant, P.F., appeals a stalking civil protection order issued by the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2}    A.S. and P.F. were friends with a shared interest in animal welfare. They worked together as part of an animal rescue organization, communicating frequently by means of Facebook and text messaging. In late 2012, a disagreement about the involvement of a third person in their Facebook group dissolved their relationship, leading to hard feelings, harsh words, and threatening electronic messages. Around the same time, a third person learned of A.S.'s criminal record and took steps to reveal it to her employer. A.S. petitioned the Lorain County Court of Common Pleas for a stalking civil protection order, which issued after a full hearing on the petition. P.F. appealed.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED TO THE PREJUDICE OF [P.F.] BY GRANTING
A CIVIL STALKING PROTECTION ORDER AGAINST [P.F.].

{¶3}   In her assignment of error, P.F. has raised four "issue[s]" that, in her view, demonstrate that the protection order issued in error. The first three issues are arguments that the trial court's conclusion that A.S. was entitled to a civil stalking protection order is against the manifest weight of the evidence.[1] The fourth issue that A.S. has identified argues that the scope of the protection order is an abuse of the trial court's discretion.

{¶4}   Because this case arose after July 1, 2012, it is governed by the provisions of newly-adopted Civ.R. 65.1. "According to Civ.R. 65.1(F)(3), civil protection petitions may be referred to a magistrate for determination, but civil protection orders are not 'magistrate's order[s]' as contemplated by Civ.R. 53(D) and are not subject to the requirements of Civ.R. 53 related to magistrate's orders." *R.C. v. J.G.*, 9th Dist. Medina No. 12CA0081-M, 2013-Ohio-4265, ¶ 5. The trial court's review is limited, and a protection order is a final appealable order that may be fully reviewed on appeal with or without objections being filed in the trial court. *Id.* Consequently, as in other civil cases, we review the evidence underlying protection orders to determine whether sufficient evidence was presented or whether the protection order is against the manifest weight of the evidence. *Id.* at ¶ 6, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, paragraph two of the syllabus. With respect to the scope of a protection order, however, we consider whether the trial court abused its discretion. *R.C.* at ¶ 15.

---

[1] Although P.F. has phrased these issues in terms of sufficiency, we note that the substance of her arguments is that in light of all of the evidence presented, the trial court's decision is not supported by the weight of the evidence.

**{¶5}**    In this case, P.F.'s first argument is that the protection order is against the manifest weight of the evidence.  Consequently, this Court

> "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."

(Internal citations omitted.)  *Eastley* at ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).  A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the judgment.  *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986), citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

**{¶6}**    In order for a civil stalking protection order to issue, the trial court must find that the petitioner has shown by a preponderance of the evidence the respondent committed an act against the petitioner that would constitute menacing by stalking.  *Lewis v. Jacobs*, 2nd Dist. Montgomery No. 25566, 2013-Ohio-3461, ¶ 9.  R.C. 2903.211(A)(1), in turn, provides that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."  "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when he is aware that such circumstances probably exist."  R.C. 2901.22(B).

**{¶7}**    R.C. 2903.211(A)(1) permits proof that the petitioner feared physical harm or suffered mental distress.  *See*, *e.g.*, *State v. Barnhardt*, 9th Dist. Lorain No. 05CA008706, 2006-Ohio-4531, ¶ 11 ("[I]n order to show that a defendant violated R.C. 2903.211, the State must show that the defendant engaged in conduct that he knew would probably cause the complainant to believe that defendant would harm her or that he knew would 'probably cause' the

complainant to suffer from mental distress."). *But see Holloway v. Parker*, 3d Dist. Marion No. 9-12-50, 2013-Ohio-1940, ¶ 23, fn.5 (noting that a majority of appellate districts have concluded that the statute requires "only that the victim believes the stalker would cause mental distress[.]"). "Physical harm" includes "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶8} The conduct at issue in this case consists entirely of electronic communications in the form of Facebook posts and text messages. Two facts complicate the matter. First, it appears from the exhibits submitted at the hearing that the parties communicated interchangeably across multiple electronic platforms so that, for example, they might be sending text messages and Facebook messages to one another during the same time period while also referencing posts on various Facebook pages that were not introduced at the hearing. Second, their communications refer constantly to other people with whom, it appears, A.S. and P.F. were caught in an unfortunate web of gossip, finger pointing, and back biting. Again, the communications between A.S. and P.F. and these other individuals were not part of the record. Nonetheless, the evidence that was presented at the hearing does not support the conclusion that this is the exceptional case in which the trier of fact lost its way.

{¶9} A.S. testified that after her relationship with P.F. deteriorated, she "started getting text messages, threatening text messages, Facebook harassment, stuff like that" from P.F. A.S. provided the trial court with copies of some relevant text messages and Facebook communication. These included a series of text messages in which P.F. wrote, "You need to call me now because this is about to blow up in your face[.] * * * You BETTER CALL ME OR YOUR PUBLIC RECORD WILL BE SHARED." P.F. also wrote, "[I]t's a f---ing promise. Don't act like an angel when you just want to rule over everyone. * * * You are GAME OVER

if you think this is acceptable" and "Get ready for a s—t storm * * * You have no idea what you started now." In some of the final text messages, P.F. commented on her access to A.S.'s address and wrote:

> Come on, princess, we need addresses, and so does your parole officer, or probation officer, I am done with this * * *. This is like an old fashioned show down – you and [a third person] against me and about ten others. So do you want to [b]e alone at your * * * address or give us [her] address too. At least be fair and go down with your friends.

The nature of these messages is to communicate a threat, and the language they employ demonstrates that P.F. communicated with knowledge of the effect that her words would probably have on A.S. As a consequence of these messages, A.S. feared for her physical wellbeing and that of her family. She testified that because of these messages, "My kids are afraid to let out the dogs and all that. We would like to move because they are afraid to go outside because [P.F.] has our address now." Although A.S. denied that P.F. had "physically threatened" her, her response to the magistrate's questions in context indicates that A.S. may have been making a distinction between threats made by text message and those conveyed in person. She also testified that P.F. had threatened to reveal her criminal record to her employer and that she believed P.F. had followed through on the threat, leading to the loss of her employment. For this reason, she said, she believed that P.F. would follow through on any other threats that she made.

{¶10} P.F. provided additional detail about the parties' relationship, testifying that until around January 12, 2013, the two were "really good friends" who worked together on an animal rescue project. P.F. described the deterioration of the friendship and provided a record of the text messages and Facebook communications between the two from November 2012 through January 2013. When her testimony and exhibits are considered together, it appears that an initial

dispute between P.F. and A.S. occurred around January 11, 2013. At that time, they disagreed about the role that another woman should play in their online rescue group. Despite some apparent efforts to resolve the conflict, the two cut off most of their communication and the hostility between them deepened. According to P.F., A.S. began posting comments to a Facebook group page that were hurtful and accusatory toward her, and it appears that those comments furthered a division of loyalties among the parties' mutual online acquaintances. While these comments are not in the record, they are significant to the timeline of events in this case because it appears that they precipitated and were intermingled with the text messages that A.S. submitted as evidence of P.F.'s threatening behavior. Nonetheless, P.F. did not offer any alternative explanation for the threatening text messages that A.S. submitted in support of her petition.

{¶11} P.F. has argued that the record demonstrates that someone else notified A.S.'s employer that she had a criminal record, which led to the termination of A.S.'s employment. A third party, who testified that she was not affiliated with P.F., did testify and accepted responsibility for those actions. The fact that P.F. did not contact A.S.'s employer, however, does not change the character of the communications that are also in the record.

{¶12} This Court has thoroughly reviewed the record, including the transcript of the magistrate's hearing and the copies of all of the parties' electronic communications that were considered by the trial court. We are mindful that although our review requires us to act as the "thirteenth juror," we do so from a written record and without the benefit of live testimony from which the trier of fact can assess the credibility of the witnesses. As such, this Court "must always be mindful of the presumption in favor of the finder of fact" and "'[i]f the evidence is susceptible of more than one construction, [this Court] is bound to give it that interpretation

which is * * * most favorable to sustaining the verdict and judgment.'" (Internal citations omitted.) *Eastley*, 2012-Ohio-2179, at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 fn.3 (1984). We have weighed the evidence with reference to the inferences that can be drawn from it and considered the credibility of the witnesses and, having done so, we conclude that the weight of the evidence supports the conclusion that P.F. knowingly engaged in a pattern of conduct that caused A.S. to believe that she would cause her physical harm. This is not the "exceptional case" in which the weight of the evidence weighs heavily against the judgment. *See Martin*, 20 Ohio App.3d at 175.

{¶13} P.F.'s second argument is that the trial court erred by restraining her from conduct with A.S.'s children. "Because R.C. 3113.31 expressly authorizes the courts to craft protection orders that are tailored to the particular circumstances, it follows that the trial court has discretion in establishing the scope of a protection order, and that judgment ought not be disturbed absent an abuse of discretion." *Abuhamda-Sliman v. Sliman*, 161 Ohio App.3d 541, 2005-Ohio-2836, ¶ 9 (8th Dist.2005). When applying the abuse of discretion standard, an appellate court does not substitute its own judgment for that of the trial court and considers whether the trial court's action was arbitrary, unreasonable, or unconscionable. *Sinclair v. Sinclair*, 182 Ohio App.3d 691, 2009-Ohio-3106, ¶ 7 (4th Dist.2009), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). *See also R.C.*, 2013-Ohio-4265, at ¶ 15.

{¶14} In this case, P.F.'s threats were directed toward A.S., but with the connotation that the threats may be connected to A.S.'s home. A.S. testified that her children were afraid to go outdoors after the threats because P.F. knew where they lived. Given the nature and tone of the threats and P.F.'s emphasis on the fact that she knew where to find A.S., it was not an abuse of discretion for the trial court to include A.S.'s children within the scope of the protection order.

**{¶15}** The stalking civil protection order is not against the manifest weight of the evidence, and the scope of the protection order does not reflect an abuse of discretion. P.F.'s assignment of error is, therefore, overruled.

III.

**{¶16}** P.F.'s assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, J.
DISSENTING.

{¶17}  I respectfully dissent.  P.F. argues that there was insufficient evidence to show that P.F. knowingly caused A.S. to believe that she would cause her physical harm.  I agree.

{¶18}  As an initial matter, I would recognize this case as the unfortunate result of the role that social media has come to play in the lives of people who have embraced the ease of publically posting inappropriate comments.  Nevertheless, regardless of the impropriety and distasteful nature of the comments at issue here, I do not believe that P.F.'s comments rose to the level of menacing by stalking.

{¶19}  As the majority indicates, before a civil protection order may issue, the petitioner must prove all the essential elements of menacing by stalking.  In this case, A.S. failed to do so.  Although the magistrate questioned A.S. about whether P.F. had threatened her with physical harm, A.S. replied that she had not.  A.S. explained that P.F. had merely threatened her job.  Moreover, A.S. did not testify that she suffered any mental distress.  In addition, while she asserted that her children were afraid to go outside, she did not testify that P.F. had made any threats to her children or their safety.  Based on the record, it appears that her children were only aware of P.F.'s communications because A.S. told them about them.  Finally, the text messages cited by the majority did not indicate any threats of physical violence by P.F. against A.S.  When read in context, they clearly referred to P.F.'s attempts to obtain addresses for a libel lawsuit against A.S. and others.  Under these circumstances, I would conclude that A.S. failed to present evidence on each essential element of menacing by stalking on which the petition for a civil protection order was premised.  Accordingly, I would reverse the trial court's judgment.

APPEARANCES:

DANIEL J. GIBBONS, Attorney at Law, for Appellant.

A. S., pro se, Appellee.