[Cite as *Lundin v. Niepsuj*, 2017-Ohio-7153.]

STATE OF OHIO            )            IN THE COURT OF APPEALS
                         )ss:         NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT         )

BARBARA LUNDIN                         C.A. No.      28223

     Appellee

     v.                               APPEAL FROM JUDGMENT
                                       ENTERED IN THE
VINCENT NIEPSUJ                        COURT OF COMMON PLEAS
                                       COUNTY OF SUMMIT, OHIO
     Appellant                        CASE No.      DR 2011-04-0968

DECISION AND JOURNAL ENTRY

Dated: August 9, 2017

---

CANNON, Judge.

{¶1}     Appellant, Vincent Niepsuj, appeals from the modified domestic violence civil protection order issued by the Summit County Court of Common Pleas, Domestic Relations Division, on March 31, 2016.  The order restrains appellant from having contact with his ex-wife, Barbara Lundin (appellee herein) and their son, T.N., who was 16 years old at the time the order was entered.  For the following reasons, the trial court's judgment is vacated, and judgment is entered for appellant.

{¶2}     On June 2, 2011, the trial court issued a domestic violence civil protection order ("CPO") with an expiration date of April 13, 2016.  This court affirmed the CPO on March 26, 2014.  *Lundin v. Niepsuj*, 9th Dist. Summit No. 26015, 2014-Ohio-1212.  The CPO was modified multiple times thereafter.

{¶3}     Shortly before the CPO was set to expire, on February 9, 2016, appellee filed a motion to modify the CPO, asking the trial court to extend the CPO for another five years.  The

reason stated in support of the requested extension was "the history of the case and the past violations." Appellant filed a response in opposition, a motion to deny and dismiss the motion, and a request to enjoin appellee.

{¶4} On March 30, 2016, the trial court held a hearing on appellee's motion to modify the CPO and on appellant's motion to modify parental or visitation rights in the separate divorce case between the parties. Both parties appeared pro se. Appellant had subpoenaed multiple witnesses with regard to his motion to modify parental or visitation rights but indicated he was not aware the motion to modify the CPO was also to be heard that day. Appellant was admonished many times by the trial court during his examination of the witnesses: he had a tendency to break off into lengthy statements instead of questioning, cross-examine his own witnesses, and argue with the court. After those witnesses testified with regard to the divorce case, appellant called appellee to the stand.

{¶5} Appellee testified that T.N. has expressed embarrassment and concern about appellant being nearby or on the premises at school and church. Appellee stated that appellant "[goes] around Portage County talking to all these people [and] it gets spread around the school, back to the boys and they find it embarrassing." Appellee mentioned that appellant had violated the initial CPO by criminally trespassing, but she did not reference specific examples of when this occurred. She also testified that appellant had attempted to violate the CPO by once asking T.N.'s adult brothers to bring T.N. when they were scheduled to meet with appellant.

{¶6} The trial court then told appellant he was done with the witness, and the trial court questioned appellee with regard to the CPO.

Q: Tell me the reasons why you're requesting an extension of the Civil Protection Order.

A: Based on Mr. Niepsuj's behaviors, based on the fact he violated the Civil Protection Order –

Q: When?

A: – in the past. Um – um you – I think I put the dates in my filing of the violation of the Civil Protection Order and criminal trespassing. There is really no need for Vince or I to have a relationship.

MR. NIEPSUJ: I don't want a relationship with you.

THE COURT: Would you please not interrupt her.

Q: Are you still in – in –

MR. NIEPSUJ: Is she still testifying?

THE COURT: Yes.

MR. NIEPSUJ: Because I'd like to ask her about that CPO.

Q: Are you – are you still in fear for your safety?

MR. NIEPSUJ: She's never –

A: Yes.

MR. NIEPSUJ: – said that.

THE COURT: Would you just –

MR. NIEPSUJ: You're putting words in her mouth, Your Honor. She never said that, you said that.

THE COURT: Mr. Niepsuj –

MR. NIEPSUJ: Your Honor, she never said that.

THE COURT: Mr. Niepsuj –

MR. NIEPSUJ: Why did you say she's still in fear?

THE COURT: Because I have a right to ask her the question.

MR. NIEPSUJ: She –

THE COURT: Now sit down and shut up.

MR. NIEPSUJ: We never established she's in any fear at all, Your Honor.

Q: Are you in fear that this man may cause you harm as well as your son, [T.N.]?

A: Yes.

Q: Do you want – for how long do you want the extension?

A: Five years.

Q: Until – until the child becomes of age?

A: For him until the age but I would like at least five years. I would like the full five years.

MR. NIEPSUJ: Okay. I'd like to –

A: So we don't have to come back.

MR. NIEPSUJ: I'd like you on the stand to ask – to ask you why – what a CPO's about. You don't just simply have it because something's inconvenient to you. It has to do with the threat of harm, physical harm, impending harm. I'd like to ask you questions about the actual CPO. We've talked about [T.N.] but we haven't talked about the CPO. We didn't even know we were meeting here for the CPO because nothing's established. They didn't even tell me when I checked with the officer just yesterday when the hearing was being set for the CPO and who the judge is on that. * * *

* * *

MR. NIEPSUJ: I haven't had a chance to ask her about the elements that go to a CPO whether it be harm, fear, (inaudible).

THE COURT: That's what she just said, she's in fear of harm that you would cause her and her son, [T.N.], physical harm.

MR. NIEPSUJ: What specific harm? What specific harm are you worried about? I'm trying to do good for the children, never bad. What harm could you ever even imagine?

A: Do you want me to answer?

Q: Yes you may answer the question.

A: Emotional harm.

MR. NIEPSUJ: Like what?

A: If you don't do what he says when he wants, he gets angry.

MR. NIEPSUJ: I don't get angry.

A: He screams. Yells.

MR. NIEPSUJ: I haven't even talked to the boy.

A: He gets violent.

A FEMALE SPEAKER: Are you gonna let her testify?

MR. NIEPSUJ: Yes I will.

A: I mean even all the ramblings, you know knocking things out of my hands, hitting, screaming, you can't say no to him.  He won't stop.

MR. NIEPSUJ: Every – that's not true.

THE COURT: Why don't you –

MR. NIEPSUJ: It's not true. I can testify.

THE COURT: You know, I'm going to have you gagged.

MR. NIEPSUJ: May I testify though?

THE COURT: I'm going to have you gagged if you don't pay attention to what I'm telling you.

MR. NIEPSUJ: I don't want another CPO, Your Honor.

THE COURT: You're going to be listening and not talking.

MR. NIEPSUJ: I just don't want another CPO when there's no need for it.

THE COURT: I decide that, not you.

MR. NIEPSUJ: Your Honor, I know but she hasn't shown me.

THE COURT: All right.

MR. NIEPSUJ: And you've asked her about fear, she hasn't talked about fear until you asked her about her fear.

THE COURT: The Court is going to grant the extension of the CPO.

{¶7} On March 31, 2016, the trial court issued a modified domestic violence CPO, pursuant to R.C. 3113.31. The modified CPO states that it protects appellee and T.N. for an additional five years until March 30, 2021. The CPO also includes the following relevant provisions:

> **4. RESPONDENT SHALL NOT ENTER** or interfere with the residence, school, business, place of employment, day care centers, or child care providers of the protected persons named in this Order, including the buildings, grounds, and parking lots at those locations. Respondent may not violate this Order **even with the permission of a protected person**.
>
> **5. RESPONDENT SHALL STAY AWAY FROM PETITIONER** and all other persons named in this Order, and not be present within 500 feet of any protected persons wherever those protected persons are likely to be, **even with Petitioner's permission**. If Respondent accidentally comes in contact with protected persons in any public or private place, Respondent must depart *immediately*. This Order includes encounters on public and private roads, highways, and thoroughfares.
>
> **6. RESPONDENT SHALL NOT INITIATE OR HAVE ANY CONTACT** with the protected persons named in this Order or their residences, businesses, places of employment, schools, day care centers, or child care providers. Contact includes, but is not limited to, landline, cordless, cellular, or digital telephone; text; instant messaging; fax; e-mail; voice mail; delivery service; social networking media; blogging; writings; electronic communications; or communications by any other means directly or through another person. Respondent may not violate this Order **even with the permission of a protected person**.
>
> **11. PARENTAL RIGHTS AND RESPONSIBILITIES ARE TEMPORARILY ALLOCATED AS FOLLOWS**: Parental rights shall be in accordance with the divorce decree and subsequent parental orders in divorce case no. 2002-02-0687. This Order applies to [T.N.] until he becomes an adult.

**12. VISITATION ORDERS DO NOT PERMIT RESPONDENT TO VIOLATE THE TERMS OF THIS ORDER**. As a limited exception to paragraphs 5 and 6, temporary visitation rights are established as follows: in accordance with Court orders in the divorce case.

**16. RESPONDENT SHALL NOT USE OR POSSESS** alcohol or illegal drugs.

**{¶8}** On April 4, 2016, appellant filed a timely Civ.R. 52 motion for findings of fact and conclusions of law with the trial court. Prior to the court ruling on that motion, appellant filed an appeal from the CPO on May 2, 2016. Because further action was anticipated, however, the CPO was not yet final and appealable. *See Walker v. Doup*, 36 Ohio St.3d 229 (1988), syllabus ("When a timely motion for findings of fact and conclusions of law has been filed in accordance with Civ.R. 52, the time period for filing a notice of appeal does not commence to run until the trial court files its findings of fact and conclusions of law."). .The trial court subsequently issued its findings of fact and conclusions of law on September 27, 2016. Therefore, we treat appellant's May 2, 2016 notice of appeal as a premature appeal, timely as of September 27, 2016. *See* App.R. 4(C).

**{¶9}** The trial court's findings of fact and conclusions of law consists of one paragraph:

This cause came on for hearing this 16th day of March 2016 on the Motion filed by the Petitioner requesting the Court to continue the current Civil Protection Order. She testified that both she and the parties' son, [T.N.], a protected person under the current Civil Protection Order were in fear that terminating the current Civil Protection Order in effect would be harmful to both the Petitioner and the parties' protected son, [T.N.]. She testified that the Defendant would cause her and the parties' son both physical and emotional harm should the Civil Protection Order in existence be terminated. Based on the testimony of the Petitioner, the Court hereby orders that the Civil Protection Order is extended for an additional period of five years.

**{¶10}** Appellant raises three assignments of error for our review:

[1.] The trial court erred when it extended the civil protection order in the above-captioned case absent evidence of domestic violence, in violation of Section 3113.31 of the Ohio Revised Code.

[2.] The trial court erred and abused its discretion when it issued an order in the civil protection order prohibiting the appellant from using or possessing alcohol or illegal drugs.

[3.] The trial court erred and abused its discretion when it issued an order in the civil protection order prohibiting the appellant from entering or having contact with his son's school.

{¶11} Under his first assignment of error, appellant asserts the trial court erred when it extended the CPO for five years absent a showing that appellant committed an act of domestic violence or threatened imminent serious physical harm to appellee or T.N.

{¶12} R.C. 3113.31 governs domestic violence CPOs. "A person may seek relief under this section on the person's own behalf, or any parent or adult household member may seek relief under this section on behalf of any other family or household member, by filing a petition with the court." R.C. 3113.31(C). "The petition shall contain or state:

(1) An allegation that the respondent engaged in domestic violence against a family or household member of the respondent, including a description of the nature and extent of the domestic violence;

(2) The relationship of the respondent to the petitioner, and to the victim if other than the petitioner;

(3) A request for relief under this section.

*Id.* "After an ex parte or full hearing, the court may grant any protection order, with or without bond, or approve any consent agreement to bring about a cessation of domestic violence against the family or household members." R.C. 3113.31(E)(1). The order or agreement may impose any of the restrictions listed in (E)(1)(a)-(k). *Id.*

{¶13} "Any protection order issued or consent agreement approved under this section shall be valid until a date certain, *but not later than five years from the date of its issuance or*

*approval*, or not later than the date a respondent who is less than eighteen years of age attains nineteen years of age, unless modified or terminated as provided in division (E)(8) of this section." R.C. 3113.31(E)(3)(a) (emphasis added).

{¶14} "Either the petitioner or the respondent of the original protection order or consent agreement may bring a motion for modification or termination of a protection order or consent agreement that was issued or approved after a full hearing." R.C. 3113.31(E)(8)(b).

{¶15} Additionally, "[a]ny protection order issued or consent agreement approved pursuant to this section may be *renewed* in the same manner as the original order or agreement was issued or approved." R.C. 3113.31(E)(3)(c) (emphasis added). "The statute does not explicitly set forth when a renewal is permitted, but use of the term 'renew' suggests the issuance of an additional [CPO] after the expiration of an original order." *Martin v. Martin*, 10th Dist. Franklin No. 13AP-171, 2013-Ohio-5703, ¶8, citing *Felton v. Felton*, 79 Ohio St.3d 34, 40 (1997) (noting that a CPO "can be renewed at the end of the effective period"); also citing *Little v. Little*, 10th Dist. Franklin No. 10AP-843, 2011-Ohio-318, ¶6; *Patton v. Patton*, 5th Dist. Muskingum No. CT2009-0031, 2010-Ohio-2096, ¶3; *Hershberger v. Hershberger*, 3d Dist. Seneca No. 13-2000-15, 2000 WL 1675568, *2 (Nov. 8, 2000); *Woolum v. Woolum*, 131 Ohio App.3d 818, 821 (12th Dist.1999). *See also M.J. v. L.P.*, 9th Dist. Medina No. 15CA0036-M, 2016-Ohio-7080, ¶9.

{¶16} Here, appellee moved the trial court to "modify" the CPO, utilizing the form prescribed in Sup.R. 10.01 for doing so (Form 10.01-K). It is clear, however, that appellee was actually requesting a renewal of the CPO. In her motion, appellee stated: "[M]odify the effective date of the order of protection. I wish to extend the date another five continuous years." It was also filed shortly before the initial CPO was set to expire.

{¶17} The trial court granted appellee's motion, utilizing Form 10.01-M, the form prescribed by Sup.R. 10.01 for modifying or terminating a CPO. This form provides that the terms of a modified order "shall be effective until [insert date] (SHALL BE SAME EXPIRATION DATE AS IN CIVIL PROTECTION ORDER)." This is consistent with the provision in R.C. 3113.31(E)(3)(a) that a CPO shall be valid "not later than five years from the date of its issuance or approval." The expiration date in the initial CPO was April 13, 2016. In the modified CPO, however, the trial court stated it was to be effective until March 30, 2021. Additionally, in its findings of facts and conclusions of law, the trial court did not state it had modified the CPO, but that it was "continue[d]" or "extended."

{¶18} It is clear from these circumstances that the trial court was attempting to renew the initial CPO, not modify it. Had it been a modification, as noted in the form, it would have been temporally limited by the expiration date of the original CPO. As a result, the trial court was required, pursuant to R.C. 3113.31(E)(3)(c), to renew the CPO "in the same manner as the original [CPO] was issued or approved." This would require a new finding of domestic violence, or threat thereof, under the law set forth below, to justify issuance of what amounted to an effectively new CPO.

{¶19} The decision whether to issue or renew a CPO lies within the sound discretion of the trial court. *See Hoyt v. Heindell*, 191 Ohio App.3d 373, 2010-Ohio-6058, ¶39 (11th Dist.) (citations omitted). When the trial court exercises its discretion, however, it must find that the petitioner has shown by a preponderance of the evidence that the petitioner or petitioner's family or household members are the victim of, or in danger of, domestic violence. *Felton*, *supra*, at 42, citing R.C. 3113.31(D). "Consequently, as in other civil cases, we review the evidence underlying protection orders to determine whether sufficient evidence was presented or whether

the protection order is against the manifest weight of the evidence." *A.S. v. P.F.*, 9th Dist. Lorain No. 13CA010379, 2013-Ohio-4857, ¶4 (citations omitted); *see also Charles v. Peters*, 2d Dist. Greene No. 2015-CA-52, 2016-Ohio-1259, ¶10 ("A protection order, or an order extending a protection order, requires sufficient evidence.").

{¶20} A challenge to the manifest weight of the evidence requires this court to review the evidence presented, including the reasonable inferences and the credibility of the witnesses, to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the decision must be reversed. *A.S.*, *supra*, at ¶5, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶20. In weighing the evidence, we are always mindful of the presumption in favor of the finder of fact. *Eastley*, *supra*, at ¶21.

{¶21} R.C. 3113.31(A)(1) defines "domestic violence," in pertinent part, as "[p]lacing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 [menacing by stalking] or 2911.211 [aggravated trespass] of the Revised Code[.]"

{¶22} To support the trial court's findings regarding physical harm in this case, appellee must have proved by the preponderance of the evidence that (a) she has a reasonable belief that she is in fear of imminent serious physical harm, (b) as a direct result of appellant's force or threat of force. *See Charles*, *supra*, at ¶20. "Force" means "'any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.'" *Id.*, quoting R.C. 2901.01(A)(1). "'Serious physical harm to persons' means any of the following:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5); *see Charles*, *supra*, at ¶21.

{¶23} "Imminence" is not defined in R.C. 3113.31. "Therefore, we must construe it according to its ordinary meaning. * * * 'Imminent' means 'ready to take place,' 'near at hand,' 'impending,' 'hanging threateningly over one's head,' or 'menacingly near.'" *Fleckner v. Fleckner*, 177 Ohio App.3d 706, 2008-Ohio-4000, ¶20 (10th Dist.), quoting Webster's Third New International Dictionary (1969), 1130. "'[I]mminence does not require an offender to carry out a threat immediately or be in the process of carrying it out. * * * [C]ivil protection orders are intended to prevent violence before it happens * * *.'" *Id.*, quoting *Young v. Young*, 2d Dist. Greene No. 2005-CA-19, 2006-Ohio-978, ¶105. "Therefore, 'the critical inquiry under [R.C. 3113.31] "is whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm."'" *Id.*, quoting *Maccabee v. Maccabee*, 10th Dist. Franklin No. 98AP-1213, 1999 WL 430943, *2 (June 29, 1999), quoting *Strong v. Bauman*, 2d Dist. Montgomery Nos. 17256 & 17414, 1999 WL 317432, *4 (May 21, 1999). "'This inquiry necessarily involves both subjective and objective elements.'" *Young*, *supra*, at ¶106, quoting *Strong*, *supra*, at *4.

{¶24} In its findings of fact and conclusions of law, the trial court stated, as its sole reason for extending the CPO, that appellee testified she was in fear that appellant would cause her and T.N. physical and emotional harm if the CPO was terminated. We find the trial court's

five-year renewal of the CPO was an abuse of discretion because the findings and conclusions are against the manifest weight of the evidence.

{¶25} When questioned by the trial court as to why she requested the extension, appellee stated, "Based on Mr. Niepsuj's behaviors, based on the fact he violated the Civil Protection Order in the past." When questioned as to when these alleged violations occurred, appellee responded, "I think I put the dates in my filing of the violation of the Civil Protection Order and criminal trespassing." There are no dates listed in her request for an extension of the CPO; the only grounds she provides in the motion are "the history of the case and the past violations."

{¶26} When questioned as to what kind of harm she fears from appellant, appellee stated "emotional." She testified that appellant embarrasses T.N. but did not establish when the behavior of which she complains occurred. It appears from much of her testimony that she is relying on events that occurred prior to the initial CPO in 2011.

{¶27} At the hearing, the trial court stated to appellant that appellee said she was in fear of physical harm; but appellee had not testified to such. She subsequently testified that appellant would knock things out of her hand, hit, yell, scream, and get angry. Nothing can be extrapolated from this testimony, however, as to when these events took place or that any physical harm she may fear is imminent or serious, as required by R.C. 3113.31. Again, it appears appellee is testifying to behavior that occurred prior to the initial 2011 CPO. "Merely finding that there were *past* acts of domestic violence, without anything more, is not enough to warrant a *present* civil protective order." *Solomon v. Solomon*, 157 Ohio App.3d 807, 2004-Ohio-2486, ¶27 (7th Dist.) (emphasis sic).

{¶28} Appellee may indeed be in fear of appellant. In fact, based upon the aberrant behavior of appellant at the hearing as set forth above, it is understandable. The fear, however,

must be in the context of the definitions set forth above. It cannot merely be based on embarrassment in the community or some unspecified conduct that occurred at some unspecified time in the past. In short, appellee did not present sufficient evidence, under these statutory provisions, to support a finding that, since the issuance of the original CPO, incidents occurred that caused her to have a reasonable belief that she was in fear of imminent serious physical harm as a direct result of appellant's force or threat of force. The trial court appears to have applied a solely subjective test to the question of whether appellee met her burden of proof. *See, e.g.*, *Fleckner*, *supra*, at ¶23.

{¶29} The five-year renewal of the CPO was entered against the manifest weight of the evidence.

{¶30} Appellant's first assignment of error has merit. As a result, appellant's second and third assignments of error are rendered moot.

{¶31} The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is vacated, and judgment is entered in favor of appellant.

Judgment vacated.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
TIMOTHY P. CANNON
FOR THE COURT


RICE, J.
WRIGHT, J.
CONCUR.

(Cannon, J., Westcott Rice, J., and Wright, J. of the Eleventh District Court of Appeals, sitting by assignment.)


APPEARANCES:

ADAM VAN HO, Attorney at Law, for Appellant.

BARBARA LUNDIN, pro se, Appellee.