[Cite as *H.B. v. Fye*, 2023-Ohio-3516.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

H. B.

    Appellee

    v.

RYAN FYE

    Appellant

C.A. No.    23CA011958


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    22DV091102

DECISION AND JOURNAL ENTRY

Dated: September 29, 2023

CARR, Judge.

{¶1}    Respondent-Appellant, Ryan Fye, appeals from the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, granting a domestic violence civil protection order ("DVCPO") against him. This Court affirms.

I.

{¶2}    Fye began dating H.B. in January 2022. The two dated for several months, but arguments plagued their relationship. At times, the arguments turned physical. H.B. finally decided to end the relationship after the first week of July 2022. During that week, Fye threatened to kill her and tried pushing her out of a moving vehicle. Even after H.B. ended their relationship, Fye continued to send her phone messages and follow her.

{¶3}    H.B. petitioned for a DVCPO against Fye on behalf of herself and her minor child. A magistrate issued an ex parte order and scheduled the matter for a full hearing. Following the hearing, the magistrate issued a DVCPO naming H.B. as a protected party. The magistrate found

Fye had threatened to kill H.B. and had caused her to fear for her safety. The trial court adopted the magistrate's decision and entered judgment on it.

{¶4} Fye filed objections to the magistrate's decision. H.B. filed a brief in opposition, and the trial court held a hearing on the objections. Following the hearing, the trial court overruled the objections and affirmed its prior judgment.

{¶5} Fye now appeals from the trial court's judgment. He raises two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S OBJECTION THAT A DOMESTIC VIOLENCE PROTECTION ORDER WAS INAPPROPRIATE.

{¶6} In his first assignment of error, Fye argues the trial court erred when it issued a DVCPO in favor of H.B. because she failed to prove (1) they were family or household members, or (2) their relationship qualified as a "dating relationship." We do not agree.

{¶7} "R.C. 3113.31(C)(1) permits any person to file a petition for a DVCPO alleging 'that the respondent engaged in domestic violence against a family or household member of the respondent or against a person with whom the respondent is or was in a dating relationship * * *.'" *A.G. v. Gain*, 9th Dist. Lorain No. 21CA011736, 2022-Ohio-95, ¶ 8. A petitioner must show "by a preponderance of the evidence that the petitioner * * * [is] the victim of, or in danger of, domestic violence." *Lundin v. Niepsuj*, 9th Dist. Summit No. 28223, 2017-Ohio-7153, ¶ 19. A trial court's ultimate decision whether to issue a protection order "is within the discretion of the trial court." *W.B. v. T.M.*, 9th Dist. Lorain No. 19CA011474, 2020-Ohio-853, ¶ 8. When a respondent challenges the sufficiency or weight of the evidence underlying the protection order, however, this

Court applies the civil manifest weight standard. *E.B. v. J.B.*, 9th Dist. Medina No. 19CA0071-M, 2021-Ohio-776, ¶ 7, quoting *Wetterman v. B.C.*, 9th Dist. Medina No. 12CA0021-M, 2013-Ohio-57, ¶ 8. *Accord Lundin* at ¶ 19.

{¶8} R.C. 3113.31(A)(3)(a)(i) provides, in relevant part, that a "[f]amily or household member" includes anyone who "has resided with the respondent" and who is "[a] spouse, a person living as a spouse, or a former spouse of the respondent * * *." The statute defines a "dating relationship" as "a relationship between individuals who have, or have had, a relationship of a romantic or intimate nature." R.C. 3113.31(A)(8). The phrase "dating relationship" does not include "a casual acquaintanceship or ordinary fraternization in a business or social context." *Id.*

{¶9} H.B. testified that Fye was her ex-boyfriend. She stated that they began dating in January 2022 and ended their relationship in July 2022. She described a series of fights over those months and Fye's refusal to accept their relationship was over. She shared a text message she received from Fye following their break-up. That message read:

> I promised you I will never let you fail together and that I will stand by you. I want the best for you and [your daughter] because you two are what I've always dreamt of having. * * * I miss you more than you will ever realize and I love you more than before. Good night, my beautiful queen.

During his own testimony, Fye stated that he would do anything for H.B. and viewed her as his other half.

{¶10} Fye argues the trial court erred by issuing a DVCPO against him because the evidence does not support the conclusion that he and H.B. were either (1) family or household members, or (2) in a dating relationship at some point. With respect to the latter, Fye claims the record does not support the conclusion that the two had anything more than a casual relationship. He notes that, when testifying, he never described H.B. as his girlfriend.

**{¶11}** Upon review of Fye's claim that the trial court should not have granted the protection order, we must conclude that his argument lacks merit. As noted, a person may secure a DVCPO against another person with whom they have been in a dating relationship. *See A.G.*, 2022-Ohio-95, at ¶ 8, citing R.C. 3113.31(C)(1). A "dating relationship" is defined as "a relationship of a romantic or intimate nature." R.C. 3113.31(A)(8). H.B. specifically testified that Fye was her ex-boyfriend and that they dated for seven months. She also shared the contents of a message he sent her wherein he wrote that he missed her and loved her. Viewing the evidence in a light most favorable to H.B., a rational trier of fact could have concluded that her testimony established, by a preponderance of the evidence, that she and H.B. had been in a dating relationship. *See M.R. v. T.R.*, 9th Dist. Wayne No. 14AP0049, 2016-Ohio-3493, ¶ 12. Moreover, during his own testimony, Fye admitted he would do anything for H.B. and viewed her as his other half. The lower court reasonably could have concluded that Fye felt that way because he and H.B. had been in a romantic relationship. *See R.C. 3113.31(A)(8)*. Fye has not shown the lower court lost its way and created a manifest miscarriage of justice by ruling in favor of H.B. *See E.B.*, 2021-Ohio-776, at ¶ 20. Because the record supports the conclusion that they were in a dating relationship for several months, Fye's argument to the contrary lacks merit. His first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY OVERRULING THE APPELLANT'S OBJECTION THAT APPELLEE FAILED TO PROVE BY A PREPONDERANCE OF EVIDENCE THAT DOMESTIC VIOLENCE HAD OCCURRED.

**{¶12}** In his second assignment of error, Fye argues the trial court erred when it issued a DVCPO in favor of H.B. because she failed to prove that he engaged in any acts of domestic violence under R.C. 311.31(A)(1)(a)(i) or (ii). We do not agree.

{¶13} As previously noted, a petitioner seeking a DVCPO under "R.C. 3113.31(C)(1) must show "by a preponderance of the evidence that the petitioner * * * [is] the victim of, or in danger of, domestic violence." *Lundin*, 2017-Ohio-7153, at ¶ 19. Domestic violence occurs when a person attempts to cause or recklessly causes bodily injury to a person with whom they were in a dating relationship. R.C. 3113.31(A)(1)(a)(i) and (A)(1)(b). Domestic violence also occurs when a person uses a threat of force to place a person with whom they were in a dating relationship "in fear of imminent serious physical harm * * *." R.C. 3113.31(A)(1)(a)(ii) and (A)(1)(b). When faced with a challenge to the sufficiency or weight of the evidence underlying a protection order, this Court applies the civil manifest weight standard. *E.B.*, 2021-Ohio-776, at ¶ 7, quoting *Wetterman*, 2013-Ohio-57, at ¶ 8. *Accord Lundin* at ¶ 19.

{¶14} H.B. accused Fye of threatening her throughout their relationship. She testified that he once threw a water bottle at her and, on a separate occasion, placed his hands around her neck. H.B. described an incident that occurred the first week of July 2022 while Fye was driving her home. During that incident, he threw her sunglasses out the window, caused her purse strap to choke her as he attempted to throw her purse out the window, and "tried to open the car door and push [her] out of the vehicle while it was moving." That same evening, H.B. testified, Fye spoke with her on the phone and threatened to kill her. She testified that she was afraid of Fye due to his conduct and his threats. She confirmed that, in the weeks after their break-up, he continued to contact her and follow her. Although she changed apartments to try to conceal herself from Fye, he discovered where she lived and shared pictures of her new apartment on social media.

{¶15} Fye testified that he "never choked" H.B. or ever tried to harm her. It was his testimony that H.B. would physically attack him when they fought, and he would try to protect himself. While he admitted that he threw a water bottle at H.B., he claimed that she threw one at

him first.  According to Fye, the two "mentally abuse[d] each other" throughout their relationship.  Even so, he admitted that he made threatening remarks toward H.B. via text messaging and social media.  He also admitted that his threats could have caused her to experience fear.

{¶16}  Fye argues the lower court erred when it issued a protection order in favor of H.B. because she failed to prove that he committed any acts of domestic violence under R.C. 3113.31(A)(1)(a)(i) or (ii).  He acknowledges that she accused him of trying to push her from a moving car and threatening to kill her.  Yet, he notes that H.B. failed to set forth any extrinsic evidence to support those accusations.  Because there was no evidence to corroborate her accusations, Fye argues, the lower court erred by issuing a protection order in favor of H.B.

{¶17}  The Ohio Supreme Court has recognized that "[d]omestic violence is seldom committed in the presence of eyewitnesses[,]" and, frequently, "the only evidence of domestic violence is the testimony of the victim."  *Felton v. Felton*, 79 Ohio St.3d 34, 44 (1997).  Viewing the evidence in a light most favorable to H.B., her testimony that Fye tried to push her from a moving vehicle was sufficient to prove, by a preponderance of the evidence, that he attempted to cause her bodily injury.  R.C. 3113.31(A)(1)(a)(i).  Likewise, her testimony that he threatened to kill her was sufficient to prove that he used a threat of force to place her in fear of imminent serious physical harm.  R.C. 3113.31(A)(1)(a)(ii).  Regarding the weight of the evidence, Fye admitted that he sent H.B. threatening messages and that his messages could have caused her to experience fear.  While he denied attempting to harm her or threatening to kill her, "the trial court was in the best position to determine the credibility of the parties."  *A.M. v. D.L.*, 9th Dist. Medina No. 16CA0059-M, 2017-Ohio-5621, ¶ 24.  Upon review, Fye has not shown the lower court lost its way and created a manifest miscarriage of justice by ruling in favor of H.B.  *See E.B.*, 2021-Ohio-

776, at ¶ 20. Because the record supports the conclusion that he engaged in acts of domestic violence, Fye's argument to the contrary lacks merit. His second assignment of error is overruled.

III.

**{¶18}** Fye's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

MARY CATHERINE CORRIGAN, Attorney at Law, for Appellant.

MADELYN J. GRANT, Attorney at Law, for Appellee.