[Cite as *M.P. v. T.P.*, 2024-Ohio-542.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| M. P. | C.A. No.     30580 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| T. P. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | CASE No.     DR-2022-06-1577 |

DECISION AND JOURNAL ENTRY

Dated: February 14, 2024

---

FLAGG LANZINGER, Judge.

**{¶1}**    M.P. appeals a domestic violence civil protection order ("DVCPO") issued by the Summit County Court of Common Pleas, Domestic Relations Division.  This Court affirms.

I.

**{¶2}**    M.P.'s adult son, T.P., sought a DVCPO following an altercation between the two men.  The magistrate granted an ex parte protection order and scheduled the matter for a full hearing.  Following that hearing, the magistrate recommended a three-year protection order.  The trial court adopted the magistrate's decision, and M.P. objected, arguing, in part, that the evidence did not demonstrate that T.P. feared that he was in danger of future harm.  The trial court overruled M.P.'s objections, and M.P. appealed.  M.P.'s two assignments of error raise the same arguments, so this Court addresses them together.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN GRANTING [T.P.] A [DVCPO], BY FINDING THAT HE MET HIS BURDEN OF PROOF BY PREPONDERANCE OF THE EVIDENCE THAT [T.P.] IS IN DANGER OF DOMESTIC VIOLENCE.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ABUSED ITS DISCRETION BY UPHOLDING THE MAGISTRATE'S DECISION DETERMINING THAT [T.P.] SHOULD BE GRANTED A [DVCPO].

**{¶3}** In his assignments of error, M.P. argues that the conclusions that T.P. suffered an incident of domestic violence and was in danger of future incidents of domestic violence are contrary to the weight of the evidence. This Court disagrees.

**{¶4}** In general, the decision to issue a protection order is one entrusted to the discretion of the trial court. *See W.B. v. T.M.*, 9th Dist. Lorain No. 19CA011474, 2020-Ohio-853, ¶ 8, citing *Lundin v. Niepsuj*, 9th Dist. Summit No. 28223, 2017-Ohio-7153, ¶ 19. In issuing a protection order, however, the trial court must find that the petitioner established by a preponderance of the evidence that the order should issue. *See W.B.* at ¶ 8, quoting *Lundin* at ¶ 19. Consequently, when an appellant challenges the evidence underlying a protection order, "as in other civil cases, we review the evidence underlying protection orders to determine whether sufficient evidence was presented or whether the protection order is against the manifest weight of the evidence." *A.S. v. P.F.*, 9th Dist. Lorain No. 13CA010379, 2013-Ohio-4857, ¶ 4 (noting that this Court reviews the weight or sufficiency of the evidence supporting a protection order, but "[w]ith respect to the scope of a protection order * * * we consider whether the trial court abused its discretion").

**{¶5}** When a party challenges a protection order on the grounds that it is against the manifest weight of the evidence, this Court:

> "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."

(Internal citations omitted and alterations in original.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the protection order. *A.D. v. K.S.-S.*, 9th Dist. Lorain No. 20CA011628, 2021-Ohio-633, ¶ 5, citing *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶6} Under R.C. 3113.31(C)(1), any person may seek a [DVCPO] by filing a petition that alleges "that the respondent engaged in domestic violence against a family or household member * * * including a description of the nature and extent of the domestic violence * * *." M.P.'s first argument is that the conclusion that he committed an act of domestic violence against T.P. is not supported by the evidence. Specifically, he argues that T.P.'s description of the incident in question was inconsistent and was contradicted by his mother's testimony. For purposes of R.C. 3113.31(C), "Domestic violence" includes "[a]ttempting to cause or recklessly causing bodily injury" to a household or family member. R.C. 3113.31(A)(1)(a)(i). "Bodily injury" is not defined by R.C. 3113.31, but courts have concluded that the definition of "physical harm to persons" that applies to the criminal offense of domestic violence also applies to DVCPOs. *Hankinson v. Cooper*, 12th Dist. Butler No. CA2021-11-137, 2022-Ohio-1896, ¶ 15, citing *J.R. v. E.H.*, 10th Dist. Franklin No. 16AP-431, 2017-Ohio-516, ¶ 13. Applying that definition to R.C. 3113.31(A)(1)(i), "bodily injury" consists of "any injury * * * regardless of its gravity of duration." R.C. 2901.01(A)(3). Similarly, courts have observed that under R.C. 3113.31(A)(1)(a)(i),

> "[a] person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and justifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is

reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist."

*J.R.* at ¶ 12, quoting R.C. 2901.22

**{¶7}** T.P. testified that on June 4, 2022, he traveled to his parents' neighborhood with his wife, at the request of a friend, to do some lawn work at the friend's home. While trimming the hedges, T.P. recalled, another neighbor asked him to trim her hedges as well. T.P. testified that he noticed his father, but turned away so they did not make eye contact. According to T.P., M.P. came up behind him, yelling his name. T.P. testified that M.P. "shoved a fist into [his] back" and recalled that he "nearly lost [his] balance while * * * hedge trimming with a gas-powered hedge trimmer." T.P. testified that upon seeing M.P. strike him, his wife called 911. In contrast, T.P.'s mother testified that she saw M.P. approach T.P. from across the street but maintained that M.P. did not hit him.

**{¶8}** M.P. notes that T.P. described the events at issue differently. In his petition for a protection order, T.P. wrote that M.P. "put his hand on me with force." During the ex parte hearing, T.P. explained that M.P. "like pushed me, he got me off balance * * *." T.P. used different words to describe the action, but they are not, as M.P. maintains, contradictory. Although T.P.'s mother's testimony differed from his, the trial court was in the best position to assess their credibility and was free to believe all, part, or none of their testimony. *See T.M. v. R.H.*, 9th Dist. Summit No. 29556, 2020-Ohio-3013, ¶ 42. The conclusion that M.P. attempted to cause or recklessly caused bodily injury to T.P. is not contrary to the manifest weight of the evidence. *See* R.C. 3113.31(A)(1)(a)(i).

**{¶9}** M.P. has also argued that the trial court's judgment is against the manifest weight of the evidence because T.P. did not establish that a [DVCPO] was necessary to prevent future

acts of domestic violence. Domestic violence protection orders provide the trial court with a means "to bring about the cessation of domestic violence against [a] family or household member." *Wetterman v. B.C.*, 9th Dist. Medina No. 12CA0021-M, 2013-Ohio-57, ¶ 9, quoting R.C. 3113.31(E)(1). Consequently, "[w]hen granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner * * * [is] in danger of domestic violence." *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus. "To determine whether a petitioner is in danger of future harm in the domestic violence context, courts routinely look to the petitioner's and respondent's history, including whether any past acts of violence had ever occurred." *In re E.P.,* 8th Dist. Cuyahoga No. 96602, 2011-Ohio-5829, ¶ 33. Although past incidents are relevant, the petitioner must present some evidence demonstrating a reasonable present fear of future harm. *See K.B. v. B.B.*, 9th Dist. Summit No. 28129, 2017-Ohio-71, ¶ 7, quoting *McElroy v. McElroy*, 5th Dist. Guernsey No. 15 CA 27, 2016-Ohio-5148, ¶ 38.

{¶10} T.P. testified that as a result of this incident, he experienced fear and confusion because it appeared that M.P. did not respect boundaries. T.P. explained that he petitioned for a DVCPO, after M.P. also petitioned for a DVCPO, because "there is a threat of harm and [M.P.] crossed the boundary of that. * * * I'm fearful of what he'll do." As background for his petition, T.P. acknowledged that he had issues with his father related to past events. T.P. testified that he was "very abused growing up." Additionally, T.P. testified that M.P. struck him frequently at work and "would hit me with anything he could grab." T.P. also testified about three instances when he had previously contacted the police to file a complaint about M.P.'s actions toward him. The first occurred while T.P. was attempting to remove his belongings from M.P.'s residence. Testifying about the second incident, T.P. stated that "[M.P.] actually attacked me, and it took three police officers to get him off me." After email communication from M.P., T.P. filed a third complaint

seeking police assistance to get M.P. to stop emailing him. Additionally, T.P. testified that his sister has a restraining order against M.P. because "[h]e was stalking." With respect to their recent relationship, T.P. explained that he worked with his father's business until 2017, when their relationship effectively ended. Since that time, T.P. testified, he had virtually no communication with M.P. T.P. testified that he had no contact with his father after the incident that precipitated the petition. While T.P. did testify that he has no communication with M.P., T.P. also testified that, "I see [M.P.] in the store. I see him driving past me. He flipped me off while he was driving. I've seen him multiple times out of Bedford."

{¶11} T.P.'s mother also testified about T.P.'s relationship with his father. Like T.P., she explained that there is no communication between T.P. and his parents and that they only see him if he is in their neighborhood. T.P.'s mother explained that there is no relationship between T.P. and M.P., noting, for example, that although they knew T.P. was married, they did not know anything about his wife.

{¶12} In order for a domestic violence protection order to issue, there must be "some competent, credible evidence that there is a present fear of harm." *Wetterman*, 2013-Ohio-57, at ¶ 12. T.P. articulated a fear that "[M.P.] just felt like he could do whatever he wanted * * *." T.P. also stated that he was "fearful of what [M.P. will] do." T.P. testified about past abuse by M.P. and testified about three prior incidents where he sought police assistance. Additionally, T.P. testified that he had seen M.P. multiple times away from M.P.'s residence.

{¶13} To the extent that the trial court's decision relied upon a credibility determination about the sincerity of T.P.'s fear, "that determination is entitled to considerable deference on appeal." *R.K. v. T.K.*, 9th Dist. Summit No. 28576, 2017-Ohio-7855, ¶ 14, citing *State v. Scheiman*, 9th Dist. Medina No. 04CA0047-M, 2005-Ohio-15, ¶ 22-23. Having reviewed the entire record,

we cannot say that the trial court clearly lost its way when it granted the DVCPO in favor of T.P. Accordingly, M.P.'s assignments of error are overruled.

III.

{¶14} M.P.'s assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, P. J.
CONCURS.

HENSAL, J.
<u>CONCURRING IN PART, AND DISSENTING IN PART.</u>

{¶15} As the majority opinion notes, the conclusion that M.P. recklessly caused bodily injury to T.P. is not against the manifest weight of the evidence, and I concur with the majority in that regard. With respect to the conclusion that T.P. was in danger of future incidents of domestic violence, however, I respectfully dissent.

{¶16} Standing alone, past acts of domestic violence do not warrant a present domestic violence civil protection order. *Lundin v. Niepsuj*, 9th Dist. Summit No. 28223, 2017-Ohio-7153, ¶ 27, quoting *Solomon v. Solomon*, 157 Ohio App.3d 807, 2004-Ohio-2486, ¶ 27 (7th Dist.). The petitioner must demonstrate a reasonable present fear of future harm. *See K.B. v. B.B.*, 9th Dist. Summit No. 28129, 2017-Ohio-71, ¶ 7, citing *McElroy v. McElroy*, 5th Dist. Guernsey No. 15 CA 27, 2016-Ohio-5148, ¶ 38. In this case, T.P.'s fear was grounded in what M.P. could have done under the circumstances and how the situation could have escalated. Although T.P. articulated a degree of fear, his testimony did not connect that apprehension to a present fear of ongoing harm. T.P.'s testimony regarding M.P.'s past conduct was vague, and the basis for the petition appeared to be the single incident between T.P. and M.P. described during the hearing. Significantly, both T.P. and his mother testified that there was no ongoing relationship between T.P. and M.P., and both acknowledged that the two men had no further contact after the incident at issue. *Compare A.D. v. K.S.-S.,* 9th Dist. Lorain No. 20CA011628, 2021-Ohio-633, ¶ 10-12 (concluding that the decision to issue a juvenile protection order was against manifest weight of the evidence because it was based on a single altercation, the parties had no further contact, and there was no evidence of a fear of future harm).

{¶17} In the absence of any competent, credible evidence that T.P. presently feared harm from M.P., I would conclude that the trial court's decision to issue the domestic violence civil protection order is against the manifest weight of the evidence. On that basis, I respectfully dissent.

APPEARANCES:

CHRISTOPHER G. THOMARIOS, Attorney at Law, for Appellant.

KENNETH MARTIN, Attorney at Law, for Appellee.