[Cite as *A.M. v. D.L.*, 2017-Ohio-5621.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

A.M.

     Appellee

     v.

D.L.

     Appellant

C.A. No.     16CA0059-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     16DV0055

DECISION AND JOURNAL ENTRY

Dated: June 30, 2017

TEODOSIO, Judge.

{¶1}    Appellant, D.L., appeals the judgment entered on July 5, 2016, by the Medina County Court of Common Pleas, overruling objections and adopting the magistrate's full hearing domestic violence civil protection order. We affirm.

I.

{¶2}    In March 2016, the appellee, A.M., filed a petition for a domestic violence civil protection order pursuant to R.C. 3113.31 against the appellant, D.L., with whom she was in a relationship from 2012 through 2015, and with whom she shares a child. An ex parte civil protection order was issued, and the matter was set for a full hearing before the magistrate. After the hearing, the magistrate issued the domestic violence civil protection order entered on April 19, 2016. Along with limiting the contact between the parties, the order provided that D.L. was prohibited from possessing any deadly weapon, including firearms and ammunition, and was prohibited from using alcohol or illegal drugs. A hearing was held on D.L.'s objections to the

magistrate's decision, and on July 5, 2016, the trial court issued a judgment entry overruling the objections and adopting the magistrate's full hearing domestic violence order.  D.L. now appeals, raising two assignments of error.

II.

ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED IN ISSUING THE DOMESTIC VIOLENCE CIVIL PROTECTION ORDER BECAUSE THERE WAS NOT SUFFICIENT EVIDENCE OF DOMESTIC VIOLENCE BETWEEN [D.L.] AND [A.M.], AND THE EVIDENCE THAT WAS PROVIDED WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶3}    In his first assignment of error, D.L. argues that the trial court erred in granting a domestic violence civil protection order because there was insufficient evidence of domestic violence and because the judgment was against the manifest weight of the evidence.  We disagree.

{¶4}    The issuance of a domestic violence civil protection order is governed by R.C. 3113.31, which allows a court to grant a protection order after a full hearing "to bring about a cessation of domestic violence against the family or household members."  R.C. 3113.31(E)(1). The Supreme Court of Ohio has held that in order to grant a protection order pursuant to R.C. 3113.31, "the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus.  As defined in R.C. 3113.31(A)(1), the phrase "domestic violence" means the occurrence of one or more of the following acts against a family or household member:

(a) Attempting to cause or recklessly causing bodily injury;

(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;

(c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;

(d) Committing a sexually oriented offense.

{¶5} In the present case, the domestic violence civil protection order adopted by the trial court provides: "Respondent engaged in a pattern of conduct knowingly causing Petitioner to believe that he would cause her bodily harm. Such conduct includes destruction of property during arguments, negative and degrading verbal communications with the Petitioner, [and] threatening to remove the child from the Petitioner." The "pattern of conduct" standard is provided for by R.C. 2903.211, which is referenced by R.C. 3113.31(A)(1)(b), and provides:

> No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person.

{¶6} However, the trial court did not rely upon the "pattern of conduct" standard for domestic violence. Rather, the trial court noted that under R.C. 3113.31(A)(1), a person commits an act of domestic violence by placing another person, by the threat of force, in fear of imminent serious physical harm or by committing a sexually oriented offense. The trial court specifically found that "[b]ased upon the totality of the circumstances, as well as the Petitioner's subjective state of mind, * * * [the] Petitioner's fear of imminent serious physical harm was reasonable." The trial court went on to find that "while Respondent's degrading comments to Petitioner do not rise to the requisite level, the tumultuous history between the parties, together with the recent alleged sexual assault, were sufficient to constitute reasonable fear of imminent serious physical harm."

{¶7} D.L. first argues that the incidents recited in the protection order "are too remote in time from one another to be considered a "pattern of conduct" pursuant to R.C. 2903.11(D)(1). An order by the trial court adopting, modifying, or rejecting a magistrate's granting of a protection order after a full hearing is a final, appealable order. Civ.R. 65.1(G); *see also* Civ.R. 65.1(F)(3)(c). Therefore, our review is of the trial court's judgment entry of July 5, 2016, that overruled objections and adopted the magistrate's full hearing domestic violence order. Because the trial court, in its judgment entry of July 5, 2016, did not utilize the "pattern of conduct" standard in its analysis of the matter and did reach a conclusion that D. L. engaged in a "pattern of conduct," we find this argument without merit.

{¶8} The second argument set forth by D.L. is that the trial court erred in finding that A.M. had a reasonable fear of imminent serious physical harm. We note that this finding is the basis of the trial court's judgment entry of July 5, 2016. As D.L. has raised this argument under an assignment of error raising both "sufficiency of the evidence" and "manifest weight of the evidence," the two standards will be discussed separately below.

{¶9} When reviewing such a finding, "the critical inquiry is 'whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent) serious physical harm[.]'" *State v. McKinney*, 9th Dist. Summit No. 24430, 2009–Ohio–2225, ¶ 11, quoting *State v. Tackett*, 4th Dist. Jackson No. 04CA12, 2005–Ohio–1437, ¶ 14. Additionally, "both the totality of the circumstances, as well as the victim's state of mind, are relevant to the determination that the threat of harm was imminent." *Chafin v. Chafin*, 9th Dist. Lorain No. 09CA009721, 2010–Ohio–3939, ¶ 22. In carrying out this inquiry, we refer to the petitioner's history with the respondent. *Wohleber v. Wohleber*, 9th Dist. Lorain No. 10CA009924, 2011–Ohio–6696, ¶ 13. However, "[t]he purpose of the civil protection order is

not to address past abuse." *Wetterman v. B.C.*, 9th Dist. Medina No. 12CA0021–M, 2013-Ohio-57, ¶ 11. Rather, protection orders are intended to prevent further domestic violence. *Felton v. Felton*, 79 Ohio St.3d 34, 41 (1997).

{¶10} As such, "even with established past abuse there must be some competent, credible evidence that there is a present fear of harm." *McElroy v. McElroy*, 5th Dist. Guernsey No. 15 CA 27, 2016-Ohio-5148, ¶ 38. Previous incidents of domestic violence do not support a finding that the petitioner's fear of imminent serious physical harm was reasonable "'absent an initial, explicit indication that she was in fear of imminent serious physical harm on the date contained in the petition.'" *Chafin at* ¶ 22, quoting *Fleckner v. Fleckner*, 177 Ohio App.3d 706, 2008–Ohio–4000, ¶ 27 (10th Dist.). Nevertheless, "[e]vidence of past abuse * * * is relevant and may be an important factor in determining whether there is a reasonable fear of further harm." *Wetterman* at ¶ 12. "[T]hreats need not be verbalized[;] the threat can be apparent from conduct." *Williams v. Hupp*, 7th Dist. Mahoning No. 10 MA 112, 2011-Ohio-3403, ¶ 25.

## Sufficiency of the Evidence

{¶11} When assessing the sufficiency of the evidence for a trial court's decision to grant a civil protection order, "we must determine whether, viewing the evidence in the light most favorable to [the petitioner], a reasonable trier of fact could find that the petitioner demonstrated by a preponderance of the evidence that a civil protection order should issue." *R.C. v. J.G.*, 9th Dist. Medina No. 12CA0081–M, 2013–Ohio–4265, ¶ 7, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, ¶ 11, and *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "[S]ufficiency is a test of adequacy." *Eastley* at ¶ 11, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In applying the sufficiency standard, "'we neither resolve evidence conflicts nor assess the credibility of witnesses, as both are functions reserved

for the trier of fact.'" *State v. Tucker*, 9th Dist. Medina No. 14CA0047–M, 2015–Ohio–3810, ¶ 7, quoting *State v. Jones*, 1st Dist. Hamilton Nos. C–120570, C–120571, 2013–Ohio–4775, ¶ 33.

{¶12} The evidence presented at hearing consisted of the testimony of D.L., A.M., and two of her friends. A.M. testified that on February 15, 2006, D.L. arrived at her home without giving prior notice, entered her home without permission, took photographs of her living quarters, and subsequently told her that the apartment was a mess and he would send the photographs to his attorney. She testified that this incident made her feel scared. A.M. also testified that in March 2016, D.L. came by her apartment in his car and stated "give me my son," even though it was not his day to have the child. She testified that she moved into her grandmother's house that night because she was tired of him "doing this to [her]," and stated that the incident scared her. She further testified that in the three months prior to the hearing, D.L. constantly told her that she was a "piece of crap" and an "unfit mother."

{¶13} A.M. also testified to incidents that occurred at unspecified times during her relationship with D.L., which lasted from 2012 through 2015. These incidents included D.L. dragging her across the floor by her hair, throwing a remote control through a window, destroying a humidifier because he was angry, throwing an ashtray at her, throwing her Christmas presents into the yard, and driving over one hundred miles-per-hour in a car and telling A.M. to "say [her] prayers, that it was over." She testified that these incidents caused her to fear D.L. and that she currently fears him because of the incidents. She also testified that she had seen him get into fights with many people, and that consequently, she knew what he is "capable of."

{¶14} A.M. also described an alleged sexual assault that took place in November 2015. A.M. testified that D.L. started to kiss her, and she "told him no" because they were involved in

a custody dispute at the time. She testified that D.L. pushed her back on to a chair and forced himself on her. She testified that he asked her if she wanted him to stop, but that she "didn't want to say no because [she] didn't know what would happen after that," and instead covered her face because she was scared. She testified that afterward, he told her: "Well, I asked you if you wanted me to stop so you can't claim rape." After the incident, she received a rape kit at a hospital and talked to a police detective, but she did not proceed with pressing charges. She reiterated that she did not consent to sex with him on that day, that she was in fear for her physical safety, and that she continues to be in fear for her physical safety.

{¶15} A.B., a friend of A.M., testified that during the relationship, A.M. was afraid of D.L., and that D.L. was degrading towards A.M. She further testified that A.M. was currently terrified and lives in fear for her personal safety.

{¶16} D.L. contends that even in considering the evidence in the light most favorable to A.M., it is not reasonable to determine that there was a threat of domestic violence. With regard to the alleged trespass from February 2016, he states that A.M. did not testify that she was in fear of physical harm as a result of the incident, and that likewise, there was no threat of physical harm stemming from the March 2016 interaction when he demanded A.M. give him their son. D.L. further argues that there was no evidence that would allow a reasonable trier of fact to find that he had made any recent threats of imminent physical harm to A.M.

{¶17} D.L. also contends that there is no competent, credible evidence to support A.M.'s contention that he had a history of violence against others. He argues that the magistrate erred in finding that his conduct "caused [A.M.] so much stress that she was unable to perform at work, and only returned to her job after the ex parte [protection] order was issued," because the magistrate sustained objections to this testimony at the hearing.

{¶18} Viewing the evidence in the light most favorable to D.L., a reasonable trier of fact could find that A.M. demonstrated by a preponderance of the evidence that A.M. had a present fear of harm and that a reasonable person would be placed in fear of imminent serious physical harm. A.M. presented testimony that she was in fear of imminent serious physical harm from D.L. that was reasonable in light of the totality of the circumstances, which included an alleged sexual assault four months prior to her petition, an alleged trespass one month prior to her petition, and a history of violent behavior during their relationship. While we agree the magistrate erred to the extent she considered testimony to which objections were sustained, that testimony regarding her performance at work is not necessary to support our conclusion. There was sufficient evidence to support the trial court's decision to grant a domestic violence civil protection order.

## Manifest Weight of the Evidence

{¶19} "[T]he civil manifest weight of the evidence standard of review * * * mirrors the criminal standard." *Pelmar USA, LLC v. Mach. Exchange Corp.*, 9th Dist. Summit No. 25947, 2012–Ohio–3787, ¶ 10. In determining whether a trial court's ruling is against the weight of the evidence, the appellate court thus sits as a "thirteenth juror" to review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the trier of fact "clearly lost its way and created a manifest miscarriage of justice." *J.K. v. M.K.*, 9th Dist. Medina No. 13CA0085–M, 2015–Ohio–434, ¶ 19. "In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings." *Lundin v. Niepsuj*, 9th Dist. Summit No. 26015, 2014–Ohio–1212, ¶ 12.

{¶20} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the

syllabus. This Court recognizes that "the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010–Ohio–3296, ¶ 15. In reviewing a manifest weight challenge, reversal is only appropriate "'in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal * * *.'" *Collins v. Co*llins, 9th Dist. Summit No. 27311, 2015–Ohio–2618, ¶ 23, quoting *Boreman v. Boreman*, 9th Dist. Wayne No. 01CA0034, 2002–Ohio–2320, ¶ 10.

{¶21} In response to the evidence presented by A.M., D.L. raises several arguments that go to the issue of the manifest weight of the evidence. He first argues that A.M.'s testimony that "he shouldn't be able to just walk into my house especially when he didn't tell me that he was bringing [our son] over" indicates that she sought a protection order only so that D.L. would be prevented from going to her residence or contacting her, not because she had a fear of imminent physical harm. In support of this theory, he notes that after the ex parte protection order had been issued, A.M. entered his residence without permission. We note, however, that the trial court found this contact to be accidental.

{¶22} D.L. also points to testimony that after A.M. initially made a police report with regard to the alleged sexual assault, she later called the police and told them not to continue their investigation of the matter. He states that they continued to exchange their child for parenting time after the alleged incident occurred.

{¶23} D.L. further argues that there is conflicting evidence as to why A.M. moved out of her apartment to live at her grandmother's house, and that as a result, a reasonable trier of fact would be unable to conclude that she was a credible witness. D.L.'s own testimony also conflicts with the testimony offered by A.M. He denies many of the allegations made against

him by A.M., including trespassing in her apartment, demanding that she give him their child, dragging her by the hair, physically assaulting her, and sexually assaulting her.

{¶24} The trial court was presented with conflicting testimony, however we recognize the trial court was in the best position to determine the credibility of the parties. "As the trier of fact is in the best position to assess matters of credibility, this Court is loath to disturb those determinations on appeal." *Wiseman v. Wiseman*, 9th Dist. Medina No. 13CA0009-M, 2014-Ohio-2002, ¶ 28.

{¶25} Having reviewed the record, we cannot say the trier of fact clearly lost its way and created a manifest miscarriage of justice. The trial court had before it substantial evidence that A.M. was in fear of imminent serious physical harm at the time of the hearing. Though conflicting testimony was presented, we again note that A.M. provided testimony of an alleged sexual assault four months prior to her petition, an alleged trespass one month prior to her petition, and a history of violent behavior during their relationship. A.M. also repeatedly testified that she was afraid of D.L., including a fear for her own physical safety. This is not the exceptional case where the evidence presented weighs heavily in favor of the party seeking reversal. The trial court's determination that a domestic violence civil protection order should issue due to A.M.'s reasonable fear of imminent serious physical harm was not against the manifest weight of the evidence. D.L.'s first assignment of error is overruled.

ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ERRED IN ADDING RESTRICTIONS IN THE DOMESTIC VIOLENCE CIVIL PROTECTION ORDER THAT [D.L.] SHALL NOT USE OR POSSESS ALCOHOL OR DEADLY WEAPONS, INCLUDING FIREARMS AND AMMUNITION, BECAUSE THERE WAS NOT A SUFFICIENT NEXUS BETWEEN [D.L.]'S CONDUCT AND THE RESTRICTIONS IMPOSED.

**{¶26}** In his second assignment of error, D.L. argues the trial court erred in prohibiting him from possessing deadly weapons or using alcohol because there was not a sufficient nexus between his conduct and the restrictions imposed. This Court is precluded from addressing this argument.

**{¶27}** "Civ.R. 53 governs proceedings before a magistrate and sets forth the trial court's duties in adopting or rejecting a magistrate's rulings." *Rosen v. Chesler*, 9th Dist. Lorain No. 08CA009419, 2009-Ohio-3163, ¶ 21. Civ.R. 53(D)(3)(b)(iv) provides:

> Waiver of right to assign adoption by court as error on appeal. Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

**{¶28}** Although D.L. filed objections to the magistrate's decision, he failed to object to the issues he has raised in this assignment of error, and he has not argued plain error on appeal. As this Court has consistently held, "when a party fails to properly object to a magistrate's decision in accordance with Civ.R. 53(D)(3), the party has forfeited the right to assign those issues as error on appeal." *Adams v. Adams*, 9th Dist. Wayne No. 13CA0022, 2014-Ohio-1327, ¶ 6, citing *Kiewel v. Kiewel*, 9th Dist. Medina No. 09CA0075–M, 2010-Ohio-2945, ¶ 17. Consequently, D.L. has forfeited these issues on appeal. The second assignment of error is overruled.

### III.

**{¶29}** D.L.'s assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

THOMAS L. ERB, JR. and DANA H. GARDNER, Attorneys at Law, for Appellant.

KENNETH J. LEWIS, Attorney at Law, for Appellee.