[Cite as *R.S. v. J.W.*, 2018-Ohio-5316.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

R.S.                                                    C.A. No.        28970

     Appellee

     v.                                                 APPEAL FROM JUDGMENT
                                    ENTERED IN THE
J.W.                                                   COURT OF COMMON PLEAS
                                        COUNTY OF SUMMIT, OHIO
     Appellant                                     CASE No.        DR-2017-02-0558

DECISION AND JOURNAL ENTRY

Dated: December 31, 2018

---

CARR, Judge.

{¶1}    Appellant, J.W., appeals the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms.

I.

{¶2}    R.S. filed a petition for a domestic violence civil protection order against her former fiancé, J.W., in 2016. While the trial court initially issued an ex parte protection order, the ex parte order was terminated and the petition was dismissed after a full hearing on the matter.

{¶3}    On February 27, 2017, R.S. filed a subsequent petition for a domestic violence civil protection order against J.W. pursuant to R.C. 3113.31. The trial court promptly issued an ex parte protection order. The matter proceeded to a full hearing before a magistrate. On September 19, 2017, the magistrate issued a decision granting the petition and ordering a five-year protection order against J.W. J.W. filed timely objections to the magistrate's decision. R.S.

filed a memorandum in opposition to the objections. The trial court ultimately issued a journal entry overruling the objections and adopting the magistrate's decision on February 13, 2018.

**{¶4}** On appeal, J.W. raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED BY GRANTING APPELLEE'S PETITION FOR A DOMESTIC VIOLENCE PROTECTION ORDER AS THE DECISION IS CONTRARY TO LAW AND AN ABUSE OF DISCRETION[.]

**{¶5}** J.W. raises two arguments in support of his assignment of error. First, J.W. contends that R.S. failed to present sufficient evidence that he was a family or household member as defined by R.C. 3113.31(A)(3). Second, J.W. asserts that R.S. failed to prove that he engaged in menacing by stalking as defined by R.C. 2903.211. This Court disagrees with both assertions.

**{¶6}** The issuance of a domestic violence civil protection order is governed by R.C. 3113.31, [1] which permits a trial court to issue a protection order after a full hearing "to bring about a cessation of domestic violence[.]" *See former* R.C. 3113.31(E). Before the trial court may grant a domestic violence civil protection order pursuant to R.C. 3113.31, it must find "'that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence.'" *Chafin v. Chafin*, 9th Dist. Lorain No. 09CA009721, 2010-Ohio-3939, ¶ 7, quoting *Felton v. Felton*, 79 Ohio St.3d 34, 42 (1997).

**{¶7}** A sufficiency challenge concerns the adequacy of the evidence. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11. When reviewing whether there was

---

[1] Two separate amendments to R.C. 3113.31 have taken effect since R.S. filed her petition on February 27, 2017. For the purposes of this appeal, we apply the version in place at the time R.S. filed her petition.

sufficient evidence to support a trial court's decision to grant a domestic violence civil protection order, this Court must determine whether, in viewing the evidence in the light most favorable to the petitioner, a reasonable trier of fact could find that the petitioner demonstrated by a preponderance of the evidence that a domestic violence civil protection order should issue. *A.M. v. D.L.*, 9th Dist. Medina No. 16CA0059-M, 2017-Ohio-5621, ¶ 11; *see also Eastley* at ¶ 11, and *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶8}** Former R.C. 3113.31(A)(1) defined "domestic violence" as the occurrence of one or more of the following acts against a family or household member:

(a) Attempting to cause or recklessly causing bodily injury;

(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation section 2903.211 [menacing by stalking] or 2911.211 [aggravated trespass] of the Revised Code;

(c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;

(d) Committing a sexually oriented offense.

**{¶9}** R.C. 3113.31(A)(3)(a) states that "family or household member" means any of the following who is residing with or has resided with the respondent:

(i) A spouse, a person living as a spouse, or a former spouse of the respondent;

(ii) A parent, a foster parent, or a child of the respondent, or another person related by consanguinity or affinity to the respondent;

(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the respondent, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the respondent.

### Family or Household Member

**{¶10}** J.W. first argues that R.S. failed to demonstrate that J.W. qualified as a family or household member for the purposes of R.C. 3113.31(A)(3).

**{¶11}** A review of the record reveals that J.W. filed objections to the magistrate's decision on October 2, 2017. Therein, J.W. argued that the evidence presented at the hearing did not demonstrate that R.S. was a victim of domestic violence, nor did the evidence support the conclusion that a protection order was necessary to bring about a cessation or prevention of domestic violence. Attached to J.W.'s objections was a bench brief that he had previously submitted to the trial court in lieu of closing argument. In support of his objections, J.W. noted that he had ordered the preparation of a hearing transcript. J.W. requested additional time to file "a Memorandum in Support of the foregoing Objection after the transcript has been filed herein as part of the Court's record." While J.W.'s bench brief addressed whether R.S. established the predicate relationship necessary in order to obtain a domestic violence civil protection order, J.W. did not set forth an objection on that basis.

**{¶12}** R.S. filed a memorandum in opposition to the J.W.'s objections. In addition to disputing J.W.'s evidentiary claim regarding whether he engaged in menacing by stalking, R.S. noted that J.W. simply filed a "generic statement" and failed to state his objections with particularity.

**{¶13}** The trial court initially issued an order overruling the objections on the basis that J.W. had failed to pay for the transcript he requested. J.W. subsequently demonstrated that he had, in fact, paid the deposit for the transcript, albeit two days late. The trial court issued a journal entry vacating its prior order overruling the objections. Notably, while the transcript was eventually filed with the trial court, J.W. never filed a supplemental memorandum in support of his objections.

**{¶14}** With the benefit of the transcript, the trial court issued a journal entry overruling J.W.'s objection on February 13, 2018. The trial court identified J.W.'s objections as follows:

1. The Magistrate's Decision was against the manifest weight of the evidence in that the Petitioner was not a victim of domestic violence committed by Respondent and is not in danger of being a victim of domestic violence as committed by the Respondent.

2. The Magistrate's Decision is against the manifest weight of the evidence in that the Orders contained in the Magistrate's Decision are not equitable, fair and necessary to bring about a cessation or prevention of domestic violations against the Petitioner.

**{¶15}** While the trial court did include a short discussion in support of its finding that R.S. and J.W. qualified as family or household members as defined by R.C. 3113.31(A)(3), the vast majority of the trial court's analysis was devoted to examining whether J.W. had engaged in menacing by stalking.

**{¶16}** Civ.R. 65.1(F)(3)(d)(i) provides, in relevant part, that, "[a] party may file written objections to a court's adoption, modification, or rejection of a magistrate's denial or granting of a protection order after a full hearing, or any terms of such an order, within fourteen days of the court's filing of the order." Loc.R. 27.04(B) of the Summit County Court of Common Pleas, Domestic Relations Division provides that "[a]ll objections shall be specific and state the grounds of objection with particularity." "While former Rule 65.1(G) provided that an order issued after a full hearing was a final, appealable order with or without the subsequent filing of objections, that Rule was amended in July 2016." *A.S. v. D.S.*, 9th Dist. Medina No. 16CA0080-M, 2017-Ohio-7782, ¶ 5. Civ.R. 65.1(G) now states:

Notwithstanding the provisions of any other rule, an order entered by the court under division (F)(3)(c) or division (F)(3)(e) of this rule is a final, appealable order. However, a party must timely file objections to such an order under division (F)(3)(d) of this rule prior to filing an appeal, and the timely filing of such objections shall stay the running of the time for appeal until the filing of the court's ruling on the objections.

**{¶17}** In this case, while J.W. filed objections to the magistrate's decision, he did not object on the basis that he was not a family or household member as defined by R.C.

3113.31(A)(3). Because J.W. did not object on this basis, we decline to address this argument on appeal. *See generally J.Y. v. J.Y.*, 9th Dist. Medina No. 17CA0037-M, 2018-Ohio-3522, ¶ 5.

**Menacing by Stalking**

{¶18} J.W. contends that there was not sufficient evidence to support the trial court's finding that he engaged in a pattern of conduct that caused R.S. mental distress. While J.W. admits that he contacted R.S. on a fairly regular basis via text and email, he emphasizes that those communications were not threatening in any way and his actions did not constitute a "pattern of conduct" because he had no knowledge that the communications were unwanted. J.W. further maintains that his communications with R.S. had a minimal impact on her life and did not cause her mental distress.

{¶19} The trial court noted in its journal entry that R.S. did not allege J.W. placed her in fear of imminent physical harm as outlined in former R.C. 3113.31(A)(1)(b), nor did R.S. allege that J.W. engaged in any of the other acts set forth in R.C. 3113.31(A)(1)(a)-(d). Thus, this case hinged entirely on whether J.W. engaged in menacing by stalking as defined in R.C. 2903.211. *See former* R.C. 3113.31(A)(1)(b).

{¶20} With respect to domestic violence premised on the commission of menacing by stalking, R.C. 2903.211(A)(1) provides, in relevant part, that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person * * * or cause mental distress to the other person[.]"

{¶21} A person acts "knowingly" when, "regardless of purpose, * * * the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶22} A "pattern of conduct" is defined, in pertinent part, as follows:

two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents, * * *. [T]he posting of messages, * * * or receipt of information or data through the use of * * * an electronic method of remotely transferring information, including, but not limited to, * * * telecommunications device, may constitute a "pattern of conduct."

R.C. 2903.211(D)(1).

{¶23} The menacing by stalking statute further defines "mental distress" as either:

(a) Any mental illness or condition that involves some temporary substantial incapacity; [or]

(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

R.C. 2903.211(D)(2).

{¶24} J.W.'s argument that there was no evidence that he engaged in a pattern of conduct is not well taken. "Because R.C. 2903.211(D)(1) does not elaborate on the requirement that the incidents must be 'closely related in time,' that question must be considered with reference to all of the surrounding circumstances." *R.C. v. J.G.*, 9th Dist. Medina No. 12CA0081-M, 2013-Ohio-4265, ¶ 12. The evidence presented at the hearing demonstrated that after the initial petition for a protection order was dismissed in October 2016, J.W. immediately began texting and emailing R.S on a frequent basis. While some of these messages were aimed at tying up loose ends from when the couple lived together, other messages rehashed issues surrounding their separation. While R.S. did respond on occasion, her responses were typically short and polite. J.W. often conveyed his continued feelings for R.S. and expressed his dismay that she would not communicate with him. R.S. eventually took measures to block J.W. from sending emails to her personal account. On multiple occasions, however, R.S. received

messages on her work account that referenced J.W. from shadowy, unfamiliar email addresses. One email encouraged her to reach out to J.W. Another email was exceedingly critical and encouraged her to "do all men a favor and never get involved in another relationship." J.W. went so far as to reach out to the director of a 5th grade softball league to offer to coach R.S.'s daughter's team. The director of the league testified that the offer was highly unusual coming from a male who did not have a child on the team. When it became clear that coaching the team was not feasible, J.W. then offered to pay for R.S.'s daughter's uniform, and assist other players in paying for their uniforms. After consulting R.S., the director declined J.W.'s offer. This evidence, when construed in a light favorable to R.S., was sufficient to demonstrate that J.W. engaged in a pattern of conduct toward R.S. that supported the issuance of a protection order.

{¶25} J.W.'s contention that R.S. failed to demonstrate that she experienced mental distress is also without merit. At the hearing, R.S. testified that she was scared because she felt like she was being "bombarded" with text messages and emails. She explained that the messages caused her to have anxiety.[2] Both R.S.'s mother and a friend of R.S. testified that they had noticed a recent change in R.S. in that she was no longer joyful and she appeared to be experiencing stress. The director of the softball league testified that when J.W. offered to pay for R.S.'s daughter's uniform, it was immediately apparent that R.S. was "visibly shaken" and started "tearing up." Moreover, this Court has held that evidence demonstrating that a petitioner felt compelled to alter normal routines and patterns of behavior due to respondent's conduct corroborates allegations of mental distress. *Noah v. Brillhart*, 9th Dist. Wayne No. 02CA0050,

---

[2] While R.S. testified that she spoke to a counselor about her issues, R.S. specified that the counselor was an individual who typically worked with children in a school. It is unclear from the record whether their conversations were informal in nature or whether they interacted in a formal treatment setting.

2003-Ohio-2421, ¶ 16, citing *Akron v. Andrews*, 9th Dist. Summit No. 19383, 2000 WL 108818, *6 (Jan. 26, 2000). In this case, R.S. started using a different vehicle and she changed the route that she took to work. R.S. refrained from placing window decals on the vehicle that commemorated her children's participation in sports because she did not want to be recognizable on the road. When R.S. would visit her mother, she would park in the garage so that her vehicle was out of sight. R.S. also changed her phone number. The aforementioned evidence, when construed in the light most favorable to the petitioner, was sufficient to demonstrate that R.S. experienced mental distress in light of J.W.'s conduct.

{¶26} The assignment of error is overruled.

### III.

{¶27} J.W.'s assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
CONCURS.

HENSAL, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

ERIC E. JONES, Attorney at Law, for Appellant.

ROBERT VIZMEG, Attorney at Law, for Appellee.