[Cite as *N.S. v. S.A.*, 2025-Ohio-4503.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

N.S.

     Appellant

     v.

S.A.

     Appellee

C.A. No.     25CA012215

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.     24DV094450

DECISION AND JOURNAL ENTRY

Dated: September 29, 2025

FLAGG LANZINGER, Presiding Judge.

{¶1} Petitioner-Appellant N.S. appeals the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division dismissing her petition for a domestic violence civil protection order ("DVCPO") on behalf of her minor child, B.C.S., against Respondent-Appellee S.A. This Court affirms.

I.

{¶2} N.S. filed a petition for a DVCPO pursuant to R.C. 3113.31 against S.A., B.C.S.'s stepmother, on behalf of herself and B.C.S. A magistrate granted an ex parte DVCPO as to B.C.S. only and set the matter for a full hearing. Following the full hearing, a magistrate dismissed the petition. The trial court adopted the magistrate's dismissal that same day and ordered the ex parte order be vacated immediately. N.S. filed timely objections. Following an oral hearing, the trial court overruled those objections.

**{¶3}** N.S. filed this timely appeal, raising three assignments of error. S.A. did not file an appellate brief. For ease of analysis, we consider N.S.'s second and third assignments of error together.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN FINDING INSUFFICIENT EVIDENCE OF DOMESTIC VIOLENCE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

**{¶4}** In her first assignment of error, N.S. contends the trial court's adoption of the magistrate's dismissal of her petition was against the manifest weight of the evidence. We disagree.

**{¶5}** The ultimate decision of whether to issue a protection order is within the sound discretion of the trial court. *W.B. v. T.M.*, 2020-Ohio-853, ¶ 8 (9th Dist.). An abuse of discretion implies that a trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶6}** N.S. filed the petition for a DVCPO pursuant to R.C. 3113.31. Pursuant to the statute, a court may grant a protection order after a full hearing "to bring about a cessation of domestic violence against the family or household members or persons with whom the respondent is or was in a dating relationship." R.C. 3113.31(E)(1). Before the trial court may grant a DVCPO, "it must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." (Internal citations and quotations omitted.) *R.S. v. J.W.*, 2018-Ohio-5316, ¶ 6 (9th Dist.). "For the purposes of issuing a DVCPO, '[d]omestic violence' is defined, in relevant part, as '[a]ttempting to cause or recklessly causing bodily injury' or '[c]omitting any act with respect to a child that would result

in the child being an abused child, as defined in [R.C. 2151.031,]' against a family or household member." (Alterations in original.) *T.M. v. R.H.*, 2020-Ohio-3013, ¶ 16 (9th Dist.), quoting R.C. 3113.31(A)(1). Pursuant to R.C. 2151.031(D), the definition of an "abused child" includes a child who "[e]xhibits evidence of any physical or mental injury or death, inflicted other than by accidental means . . . ."

{¶7} "'[A] trial court's decision to grant or deny a protection order is reviewed on appeal under a civil manifest weight standard.'" *T.M. v. R.H.*, 2020-Ohio-3013, ¶ 15, (9th Dist.), quoting *Wetterman v. B.C.*, 2013-Ohio-57, ¶ 8 (9th Dist.). "However, when the trial court exercises its discretion to grant an R.C. 3113.31 petition, the trial court must find that the petitioner has shown by a preponderance of the evidence that he or she is the victim of, or in danger of, domestic violence." *Lundin v. Niepsuj*, 2014-Ohio-1212, ¶ 10 (9th Dist.), citing *Felton v. Felton*, 79 Ohio St.3d 34, 42 (1997).

> Consequently, as in other civil cases, we review the evidence underlying protection orders to determine whether sufficient evidence was presented or whether the protection order is against the manifest weight of the evidence. With respect to the scope of a protection order, however, we consider whether the trial court abused its discretion.

*Lundin* at ¶ 10, quoting *A.S. v. P.F.*, 2013-Ohio-4857, ¶ 4 (9th Dist.). "Therefore, a reviewing court must look to the nature of the challenge to the civil protection order in determining the appropriate standard of review." *Lundin* at ¶ 10.

{¶8} Here, although N.S.'s stated assignment of error suggests the trial court erred in finding insufficient evidence of domestic violence, the body of N.S.'s assignment of error sounds in manifest weight. Specifically, N.S. argues that the trial court's adoption of the magistrate's dismissal of her petition is against the manifest weight of the evidence because the evidence presented at the hearing shows "B.C.S. was subjected to acts of domestic violence as defined under

R.C. 3113.31[,]" and that B.C.S. was an "abused child . . . who has suffered physical injury other than by accidental means."

{¶9} When a party challenges a protection order on the grounds that it is against the manifest weight of the evidence, this Court:

> "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."

(Internal citations omitted and alterations in original.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist. 2001). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the dismissal of a protection order. *A.D. v. K.S.-S.*, 2021-Ohio-633, ¶ 5 (9th Dist.), citing *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986).

{¶10} In her petition, N.S. alleged S.A. had committed two acts of domestic violence against B.C.S. According to N.S., S.A. (1) "burned BCS and caused second degree burns," and (2) "grabbed BCS wrist + drug down two flights of stairs while BCS body + head hit stairs/floor." Following the full hearing, the Magistrate denied the petition, concluding there was "insufficient proof by preponderance of the evidence to support a finding of domestic violence."

{¶11} N.S., B.C.S., and S.A. all testified at the full hearing. N.S. called four additional witnesses, Lindsey C., Danielle L., Jason L., and Ruth A. The magistrate did not consider the testimony of Jason L. and Ruth A. due to lack of any personal knowledge of the events.

{¶12} S.A. testified that on August 4, 2024, she was in the kitchen at Danielle L. and Jason L.'s home. S.A. had taken B.C.S. and her two children to the L.s' home for an afternoon of swimming. She testified that around dinnertime, she was taking a cookie sheet out of the oven when B.C.S. entered the kitchen through an exterior sliding door and that the two collided when

he tried to squeeze by her to get a banana. S.A. testified that B.C.S. was burned by the cookie sheet on his back under his left armpit. S.A. testified she felt terrible after the incident occurred and maintained throughout her testimony that it was an accident. She also stated that she had apologized to B.C.S for incident.

{¶13} S.A. stated that they left the L.s' home shortly after the burn incident because N.S. was scheduled to pick B.C.S. up at S.A.'s home. S.A. testified that when they returned to her home and before N.S. arrived, she applied a triple antibiotic cream to the burn. S.A. stated that she did not seek any additional medical treatment because she had addressed the burn with the cream and based on the look of the burn, she believed that was sufficient.

{¶14} S.A. also testified about the alleged dragging incident. Although the petition alleges the incident took place on August 27, 2024, S.A. testified it occurred on April 27, 2024. S.A. stated,

> We were all brushing our teeth. [B.C.S.] had to use the restroom. I told him that there was an open restroom downstairs to use. He resisted. I told him that we are not getting out of the bathroom. We are brushing our teeth and he can go downstairs to use it.

S.A. stated that she then walked B.C.S. downstairs and that she held B.C.S's hand while they descended the stairs. S.A. acknowledged that B.C.S. was mad and was yelling that he did not want to go downstairs and that she believed the behavior was typical for an eight-year-old. S.A. denied grabbing B.C.S.'s arm and denied that B.C.S. fell and/or hit his head at any point during the incident.

{¶15} S.A. further testified that N.S. had previously accused her and B.C.S.'s father of abusing the child, but that she had never intentionally hurt B.C.S., had never been charged with a crime, and had never been found through a children and family services investigation to be abusive toward B.C.S. and/or been prevented by any such investigation from being around B.C.S.

{¶16} Lindsey C. testified that she was at Danielle L.'s home when the burn incident occurred. She stated she was outside on the back deck of the home and entered the kitchen shortly after the incident to use the restroom. She testified that when she entered, B.C.S. was crying and S.A. was still holding the pan. She testified that B.C.S. told her what happened, and she asked to see the burn. She estimated that her interaction with B.C.S. occurred over four to five minutes and that B.C.S. had calmed down by the end. She testified that based on the circumstances, she believed the incident was an accident and she did not believe S.A. intentionally burned B.C.S.

{¶17} Danielle L. testified that she was outside the home when the burn incident occurred and did not witness the interaction between S.A. and B.C.S. Although she did not witness the incident, she stated that she could understand how such an accident could occur given the layout of her kitchen. No exhibits were submitted showing the layout of the kitchen.

{¶18} B.C.S. also testified at the hearing. Because B.C.S. was eight years old at the time, the magistrate conducted a competency hearing in camera and determined the child was competent to testify. N.S. does not challenge this competency determination on appeal.

{¶19} B.C.S. testified as to both incidents N.S. alleged to be acts of domestic violence in her petition. He stated that on August 4, 2024, he went with S.A. and his half-siblings to Danielle L.'s home to swim. B.C.S.'s father did not accompany them because he was at work. B.C.S. stated that he went inside the house to get a banana and that S.A. was pulling a pan out of the oven when he entered the kitchen. B.C.S. described the incident as follows:

> So I was coming into the kitchen to get a banana, [S.A.] said, watch out and I'm going up against the counter and then she's pulling the pan out and then I'm looking back at her. She looks at me really quick, looks away, and then I see her push the pan towards me and then I got burned.

B.C.S. also testified that Danielle L. was in the kitchen eating at the time of the incident, but that she did not see the burn occur because "[s]he put her head down to get a bite[.]" B.C.S. then stated

that after the burn occurred, Danielle L. came to help him. B.C.S. testified that Lindsey C. entered the kitchen after the burn occurred and told him "not to tell [N.S.] that it was on purpose, even though it was." B.C.S. acknowledged that S.A. put cream on the burn when they returned to S.A.'s house but stated he believed she did so to make the burn hurt more.

{¶20} B.C.S. testified that when his mother, N.S., picked him up, she took him straight to the police station to report the incident. After someone at the police station observed the burn, B.C.S. was taken by ambulance "to the hospital because they weren't sure if it was a second degree or third degree burn." B.C.S. stated he feels "[k]ind of scared" around S.A. "all the time" since the burn incident.

{¶21} B.C.S. also testified about the alleged dragging incident. B.C.S. did not state when the incident occurred but identified it as occurring before the burn incident. B.C.S. stated that S.A. dragged him down two flights of stairs but did not further describe the incident. B.C.S. did not testify as to any injuries he sustained as a result of this incident, and no exhibits were admitted showing any such injuries.

{¶22} N.S. acknowledged during cross-examination that she had never witnessed S.A. commit an act of domestic violence against B.C.S. N.S. also agreed that B.C.S. had previously made claims of abuse against S.A. and B.C.S.'s father. N.S. testified she did not remember the exact allegations that B.C.S. made but conceded that (1) B.C.S. claimed he was taped to a ceiling fan and spun around, (2) B.C.S. claimed "something about" his father running him over with a car, (3) B.C.S. claimed "[s]imilar instances" to being kept outside in the rain and snow. Although S.A.'s counsel questioned N.S. about other specific statements B.C.S. made to her, N.S. stated she did not recall them.

{¶23} N.S. admitted that she immediately took B.C.S. to the police station to report the burn incident instead of seeking medical attention and stated she intended to take B.C.S. to the hospital after filing a report. Pictures of the burn were admitted as Exhibits A, B, C, and D. N.S. testified that the events in her petition were not "one-time incident[s]" and that "this has been an ongoing issue where [B.C.S.] is coming home with bruises and marks or something."

{¶24} N.S. stated that she immediately took B.C.S. to the police station to report the alleged dragging incident after picking B.C.S. up. Although N.S. admitted she took B.C.S. to the police station at least a day after the incident, she also stated that bruises were just beginning to form on B.C.S.'s arm. No exhibits were admitted showing the alleged bruising. N.S. stated she assumed the investigation was closed as to the dragging incident and acknowledged that S.A. was not charged in relation to the incident, and that they "probably" determined the allegations were unfounded. N.S. testified that B.C.S. was seeing a neurologist related to headaches she claims B.C.S. suffered after the incident.

{¶25} Finally, N.S. testified she believed it was possible that S.A. burned B.C.S. on purpose but acknowledged to the magistrate that it was also possible the protection order is unnecessary.

{¶26} In the magistrate's decision dismissing the petition, the magistrate found that although there was some testimony about the incident where N.S. alleged S.A. dragged B.C.S. down the stairs, no evidence of injury was presented and no criminal charges were brought against S.A. despite N.S. having reported the alleged incident to police. Next, the magistrate found B.C.S.'s recollection of the burn incident differed from that of S.A., Lindsey C., and Danielle L., stating that "[b]y [B.C.S.'s] version of events, [S.A.] removed [a] pan from the oven and then deliberately burned him while in the presence of others." The magistrate found this differed from

S.A.'s version of the incident, wherein the S.A. "took a hot pan out of an oven, turned to place it onto the island behind her, and at the same time [B.C.S.] was walking behind her to get a banana, and an accident occurred in the kitchen." The magistrate concluded that S.A.'s version of the incident was credible. In making this determination, the magistrate indicated he did not believe that the B.C.S. was lying but instead that B.C.S.'s *recollection* of the burn incident was not credible.

{¶27} The trial court adopted the magistrate's dismissal of the petition and N.S. filed a timely objection. In her objection, N.S. asserted the magistrate abused his discretion when he denied the petition because the magistrate erred by (1) determining that the preponderance of the evidence did not support a finding that domestic violence had occurred, (2) making his credibility determinations, (3) allowing S.A.'s trial counsel to cross-examine her about statements B.C.S. previously made to her, and (4) considering those statements when determining the credibility of B.C.S.'s recollection.

{¶28} Following an oral hearing, the trial court overruled N.S.'s objections. The trial court then stated that in considering N.S.'s objections, it found the magistrate was in the best position to determine witness credibility and the weight to be given the evidence presented. The trial court also found the "Magistrate made specific findings within the Decision and appropriately applied the law based on the evidence that was provided to the Court." The trial court then determined the magistrate ruled appropriately regarding N.S.'s evidentiary objections. Finally, the trial court concluded the magistrate did not make his ruling based on the documents S.A.'s counsel referenced during his cross-examination of N.S. as asserted in her objections, but instead "on the entirety of the facts and circumstances presented to the court, which include[d] witness credibility."

{¶29} Upon review of the record, we cannot say that this is the exceptional case in which the evidence weighs heavily against the dismissal of a protection order. Although there is conflicting testimony in the record, there is competent, credible evidence to support the trial court's conclusion that there was insufficient proof by a preponderance of the evidence to support a finding of domestic violence. S.A. expressly testified that she has never intentionally hurt B.C.S. Regarding the alleged dragging incident, S.A. acknowledged the incident but testified that she held B.C.S.'s hand while she walked him down two flights of stairs. Although B.C.S. testified S.A. dragged him down the stairs, he did not describe the incident further. While N.S. claims B.C.S. sustained bruises as result of the incident, N.S. admitted she was not present, and no further evidence was presented regarding the alleged bruising. Regarding the burn incident, S.A. acknowledged the incident and admitted that she was holding the pan when it burned B.C.S. Despite B.C.S.'s belief to the contrary, S.A. testified it was an accident and that she felt terrible about it. Moreover, the homeowner testified that based on the layout of the kitchen, she could understand how such an accident could occur.

{¶30} To the extent the trial court's dismissal of the petition was based on a credibility determination, that determination is entitled to considerable deference on appeal. *M.P. v. T.P.*, 2024-Ohio-542, ¶ 13 (9th Dist.). "[T]his Court has long recognized that 'the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly.'" *T.M.*, 2020-Ohio-3013, at ¶ 42 (9th Dist.), quoting *A.M. v. D.L.*, 2017-Ohio-5621, ¶ 20 (9th Dist.), quoting *State v. Johnson*, 2010-Ohio-3296, ¶ 15 (9th Dist.). "Because the trier of fact is in the best position to assess matters of credibility, this Court is generally loath to disturb those determinations on appeal." *T.M.* at ¶ 42, citing *Wiseman v. Wiseman*, 2014-Ohio-2002, ¶ 28 (9th Dist.). Moreover, a "trier of fact is free to believe 'all, part, or none of the testimony of any witness who

appeared before it[.]'" *T.M.* at ¶ 42, quoting *Chuparkoff v. Ohio Title Loans*, 2019-Ohio-209, ¶ 15 (9th Dist.).

{¶31} Because the magistrate was in the best position to assess the credibility of the witnesses and the weight to be given their testimony, we will not substitute our judgment for that of the trial court in this case. The magistrate was entitled to rely on S.A.'s testimony about the events at issue and the trial court did not abuse its discretion in adopting the magistrate's dismissal of the petition on that basis.

{¶32} Therefore, the trial court did not abuse its discretion when it adopted the trial court's dismissal of N.S.'s petition for a DVCPO. N.S.'s first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY [FAILING] (SIC.) TO APPLY THE DOCTRINE OF RES JUDICATA AND COLLATERAL ESTOPPEL BY ALLOWING IMPROPER IMPEACHMENT AND MISAPPLYING EVIDENTIARY STANDARDS AGAINST THE RULES OF EVIDENCE TO THE TRANSCRIPT USED BY [S.A.]

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY NOT CONSIDERING [S.A.]'S USE OF A PRIOR ADJUDICATED TRANSCRIPT EVIDENCE OF WITNESS INTIMIDATION SHOWING CONSCIOUSNESS OF [HER] (SIC.) GUILT UNDER EVID.R. 404 (B)[.]

{¶33} In her second assignment of error, N.S. argues the magistrate erred by allowing S.A.'s trial counsel to cross-examine her regarding B.C.S.'s prior statements. N.S. argues that this violated the doctrine of collateral estoppel. In her third assignment of error, N.S. asserts that the trial court erred by not concluding that S.A.'s trial counsel engaged in witness intimidation by cross-examining her regarding B.C.S.'s prior statements. Because N.S. failed to raise these

arguments in her objection to the trial court's adoption of the magistrate's dismissal of her petitioner, we cannot reach the merits of her arguments on appeal.

{¶34} When a party files an objections to a trial court's adoption of a magistrate's dismissal of a protection order, the burden is on the objecting party to show that an error of law or other defect is either evident on the face of the order or that the evidence presented in support the of the petition is insufficient to support the dismissal of the protection order. Civ.R. 65.1(F)(3)(d)(iii). Although N.S. filed an objection, she failed to object on either of the bases she now raises on appeal. "Consequently, the trial court never had the opportunity to consider whether N.S. met her burden under Civ.R. 65.1(F)(3)(d)(iii) to show the errors of law she now attempts to argue for the first time on appeal." *N.S. v. E.J.*, 2020-Ohio-4971, ¶ 15 (9th Dist.).

{¶35} Because N.S. failed to raise these arguments in the court below, "we cannot reach the merits of her arguments." *Id.* citing *R.S. v. J.W.*, 2018-Ohio-5316, ¶ 17.

{¶36} Therefore, N.S.'s second and third assignments of error are overruled.

III.

{¶37} N.S.'s assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Domestic Relations Division is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

CARR, J.
HENSAL, J.
CONCUR.

APPEARANCES:

N.S., pro se, Appellant.

MICHAEL S. WILSON, Attorney at Law, for Appellee.